**Louis Thomas MARCHLEN**

v.

**The TOWNSHIP OF MT. LEBANON and John C. Ferguson, Jr., Township Treasurer, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.
Decided Feb. 20, 1998.

James H. Roberts, Pittsburgh, for appellants.

Louis Thomas Marchlen, appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

The Township of Mt. Lebanon and its Treasurer, John C. Ferguson (collectively, Mt.Lebanon), appeal from an order of the Court of Common Pleas of Allegheny County which reversed the determination of Mt. Lebanon that Louis Thomas Marchlen's non-qualified stock options[1] were subject to Mt. Lebanon's earned income tax.

The parties have stipulated to the pertinent facts of the case, and, therefore, they are not in dispute. Marchlen is an employee of the Aluminum Company of America (ALCOA) and a participant in ALCOA's employee stock option plan. The plan is administered by an employee's stock option committee which awards non-qualified stock options, in its discretion, to those employees which it deems to be "key" employees.

An employee who receives a non-qualified stock option must wait at least one year after the date on which the option is granted in order to exercise it, and after ten years the option expires. In addition, as a condition of the award, the employee must agree to remain with ALCOA for one continuous year after being awarded the option. The option itself is non-transferable except by a deceased employee's last will and testament. To exercise the option, an employee must pay ALCOA the stated amount per share that is set by the stock option committee at the time the option is awarded. The price per share which is set by the committee can be no lower than the fair market value of the stock at the time the option was granted.[2]

On July 6, 1984, Marchlen was granted a stock option (the 1984 option) to buy 500 shares of ALCOA stock at a price of $33.5625 per share, the fair market value of the stock on that day.[3] On July 12, 1985, Marchlen was similarly granted an option to purchase 600 additional shares (1985 option) at a price of $33.8125 per share.[4]

On December 1, 1988, Marchlen moved to Mt. Lebanon. Pursuant to the authority of the Local Tax Enabling Act[5] (LTEA), Mt. Lebanon imposes an earned income tax upon its residents. If the tax is not withheld by an

---

1. A non-qualified stock option plan is one that does not meet the requirements of Section 401 of the Internal Revenue Code, 26 U.S.C. § 401, and, accordingly, is not entitled to special tax treatment under the Internal Revenue Code.

2. The fair market value of the stock would be the closing price on the New York Stock Exchange, where ALCOA stock is traded, for that day. The fair market value of the 1985 option was established by Joint Stipulation of Fact No. 25.

3. The price per share was established by Joint Stipulation of Fact No. 16; the closing price on

the New York Stock Exchange, of course, would be a quote rounded to two decimal places only.

4. In February of 1995, ALCOA shares split so that Marchlen's unexercised option permitted him to purchase 1200 shares, rather than 600. The split also reduced the price per share from $33.5625 per share to $16.9063 per share. The 1984 option had already been exercised prior to the stock split.

5. Act of December 31, 1965, P.L. 1257, *as amended*, 53 P.S. §§ 6901–6924.

employer, the taxpayer is required to file a return indicating the amount of salary, wages, and compensation that he received which are subject to the tax.

On May 31, 1994, Marchlen exercised the 1984 option to purchase 500 shares of stock by paying ALCOA $16,781.25 ($33.5625 × 500); when the option was exercised, the fair market value of each share was approximately $70.5625, for a total value of $35,281.25. Thus, if Marchlen immediately sold the 500 shares of stock, he would make a profit of $18,500 ($35,281.25—$16,781.25).

On his 1994 Earned Income Tax Final Return, Marchlen did not include the "spread" [6] of $18,500, which represented the increase in value of the 1984 option from the date it was awarded until the date it was exercised. In a letter dated October 25, 1995, the Treasurer indicated that it was Mt. Lebanon's position that the $18,500 should have been included in Marchlen's 1994 tax return. In response, Marchlen disagreed and requested a hearing before the Treasurer. A hearing was held on April 30, 1996, and on July 25, 1996, the Treasurer issued a determination concluding that the $18,500 spread was subject to Mt. Lebanon's earned income tax.

On July 3, 1995, Marchlen exercised his 1985 option to purchase 1200 shares of stock by paying ALCOA $20,287.56 (16.9063 × 1200); when the option was exercised, the fair market value of each share was $50.50 for a total value of $60,600 (a $40,312.44 profit if the stocks had been immediately sold). On August 2, 1996, Marchlen similarly filed his 1995 earned income tax return. This return did not include the $40,312.44 which was the spread of the 1985 option. In a letter dated August 13, 1996, the Treasurer indicated that the spread from the 1985 option, like that of the 1984 option, was subject to Mt. Lebanon's earned income tax. Mar-

chlen appealed this decision to the Court of Common Pleas Court of Allegheny County.[7]

On appeal, the court noted that the tax treatment of non-qualified stock options by political subdivisions was essentially an issue of first impression. However, the court applied this Court's decision in *Pugliese v. Township of Upper St. Clair*, 660 A.2d 155 (Pa.Cmwlth.1995), reasoning that the non-qualified stock options in the present case were indistinguishable from the debentures at issue in *Pugliese*. The basis for this conclusion was that "[the debentures and the non-qualified stock options] grant an opportunity for the employee to participate in any appreciation in the value of the company's common stock. Both give the employee the option to invest monies which are separate from the receipt of compensation from the perspective companies." (Opinion of the Court of Common Pleas at 13.) Therefore, Common Pleas reversed the determination of the Treasurer and held that the spread from both non-qualified stock options was investment income rather than earned income and, thus, not subject to the earned income tax.

■ On appeal,[8] Mt. Lebanon argues that Marchlen's non-qualified stock options constitute earned income. Specifically, Mt. Lebanon offers two bases for this conclusion: (1) the federal and state revenue codes treat the appreciation of such options as earned income; and (2) the options constitute compensation for services rendered and, as such, the exercise of the options is earned income subject to the earned income tax by Mt. Lebanon.

■ Section 13 of the Local Tax Enabling Act, 53 P.S. § 6913, authorizes political subdivisions of the Commonwealth to impose a tax on the earned income of its residents.

---

6. The "spread" generally refers to the difference between two amounts. In the context of stocks, the spread is the difference between the asking price and bid price. In the present case, the spread refers to the difference between the cost of purchasing the stock at the time the option was awarded and the price of the stock on the day that Marchlen exercised his options.

7. The Court of Common Pleas concluded that Marchlen's appeal properly encompassed both his 1994 and 1995 Earned Income Tax filings.

8. Our standard of review in a tax appeal is limited to whether the trial court abused its discretion, committed an error of law, or issued a decision unsupported by substantial evidence. *Scott v. Hempfield Area School District*, 164 Pa. Cmwlth. 588, 643 A.2d 1140 (1994).

This section defines earned income as follows:

> 'Earned Income.' Salaries, wages, commissions, bonuses, incentive payments, fees, tips, and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property....

53 P.S. § 6913. The introductory language to this section, in addition, provides as follows:

> The definitions contained in this section shall be exclusive for any tax upon earned income and net profits levied and assessed pursuant to this act, **and shall not be altered or changed by any political subdivision levying and assessing such tax.**

*Id.* (emphasis added). Thus, it is clear that a political subdivision may not expand the definition of "earned income" beyond that which the General Assembly has defined. Mt. Lebanon's "official" definition of earned income is nearly identical to that of LTEA and provides as follows:

> 'Earned Income.' Salaries, wages, commissions, bonuses, incentive payments, fees, tips, and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property. 'Earned income' is to be distinguished from 'passive income' or 'investment income' which is received by claim other than performance of services.

The Earned Income Tax and Net Profits Tax Regulations of the Township of Mt. Lebanon § 101(f). It is in how Mt. Lebanon interprets these definitions that the controversy arises.

In *Pugliese v. Township of Upper St. Clair,* 660 A.2d 155 (Pa.Cmwlth.1995), we

examined the limited application of LTEA, as well as the distinction between earned income and investment income. Pugliese was an employee of Westinghouse Electric Corporation who participated in Westinghouse's corporate incentive compensation plan; as such, he had the option to receive awards from the plan in cash or defer fifty percent of the award and invest it in Westinghouse convertible debentures.[9] In 1984 and 1985 Pugliese exercised his right to defer his awards, and he received $317,600 in convertible debentures. In 1990, Pugliese received a total distribution of $760,798.88, representing $317,600 in cash as a deferred award plus appreciation and interest totaling $443,198.88. Pugliese made a similar deferment of $76,400 in 1991, which resulted in appreciation and interest totaling $22,703.69.

Although Pugliese did report the amount of the deferred award on his Upper St. Clair Township tax form, he did not include the remaining interest and appreciation. Upper St. Clair determined that the appreciation in his award constituted earned income. Pugliese appealed this determination to the Court of Common Pleas of Allegheny County, which reversed Upper St. Clair's determination, concluding that the interest and appreciation did not represent earned income, but was investment income and was therefore not subject to the earned income tax.

On appeal to this Court, we first addressed the expansion of the definition of earned income that Upper St. Clair's regulation presented.[10] We concluded that Upper St. Clair's expanded definition of "earned income" impermissibly enlarged the definition found in LTEA.

In addition, we reiterated the distinction between the terms "earned income" and "investment income" that was established in

---

**9.** A "convertible debenture" is a promissory note or bond backed by the general credit and earning history of a corporation "which may be changed or converted into some other security (*e.g.* stock) usually at the option of the holder." *Black's Law Dictionary* 401 (6th ed.1990).

**10.** Upper St. Clair's regulations defined the term "earned income" by incorporating LTEA's definition of earned income, but then added the following language to its rule:

> Earned income includes any item that is currently reportable on the Commonwealth of Pennsylvania Department of Revenue Form PA 40 "Gross Compensation" line, any item that is correctly reportable on the "Wages, Salaries, Tips, Etc." line of IRC Form 1040.... *Pugliese,* 660 A.2d at 156 (quoting Township of Upper St. Clair Regulation 1.1.12). This definition specifically included income derived from non-qualified stock options.

*Scott v. Hempfield Area School District,* 164 Pa.Cmwlth. 588, 643 A.2d 1140 (1994), where we concluded that the net profits which passed through to Scott, who was a sole shareholder in an "S corporation," constituted investment income rather than earned income, regardless of whether Scott was solely responsible for creating the profits of the corporation.

■ In support of a reversal of the trial court in the present case, Mt. Lebanon initially argues that both the definition of earned income contained in LTEA and the definition of earned income in its own ordinance are sufficient to encompass non-qualified stock options. Mt. Lebanon cites federal and Pennsylvania tax decisions, as well as decisions from other jurisdictions, which conclude that non-qualified stock options are a form of "compensation" for services rendered and are subject to municipal taxation. Although Mt. Lebanon concedes that its authority to tax earned income is not derived from either the federal or state revenue codes, it nonetheless asserts that the classification of non-qualified stock options as earned income by those entities similarly evinces Mt. Lebanon's ability to tax non-qualified stock options as earned income. However, as we noted in *Pugliese,* the inclusion of items as subject to the earned income tax is dependent upon what is taxable as earned income under *LTEA,* not that which is included as "compensation" or "income" for state or federal income tax purposes.

Both the federal and state revenue codes impose a tax that is applicable to "income" in the Commonwealth or "taxable income" in the federal system. Both of these terms are defined broadly by the respective codes. *See* 26 U.S.C. § 63(a); 72 P.S. § 7301(j). Neither the federal nor the state revenue code defines the term **"earned** income" for the purpose of taxation and, likewise, neither system limits the applicability of its income tax to "earned income." Therefore, neither the federal nor state revenue codes' treatment of Marchlen's non-qualified stock options is controlling in the present case, and accordingly, we decline to follow those cases cited by Mt. Lebanon. If the Pennsylvania General Assembly wishes to include the increase in the value of stocks encompassed by a stock option as earned income under LTEA and, thus, broaden the definition of earned income to mirror both the Commonwealth's and the United States' revenue codes' treatment of such property, it may do so, but it is not within the province of this Court nor Mt. Lebanon to make such an amendment. *Scott.*

■ Next, the Township argues that the two spreads are earned income because they either represent compensation for services rendered or are incentive payments to Marchlen. Although we note that the original decision to grant Marchlen the options indeed might have been to reward him for his past performance as an employee, the options themselves do. not represent earned income subject to Mt. Lebanon's earned income tax because the options themselves have no ascertainable value, unlike the debentures at issue in *Pugliese.* ALCOA did not *give* Marchlen the stock at issue in this case; it merely offered Marchlen the opportunity to purchase the stock with his own money. Granted that, for Marchlen, it was a "win-win" situation because if the value of the stock declined, he would not be obligated to exercise the option, nevertheless, when the price of the stock rose and he did exercise the option, he was still paying for the stock with his own money as he would any other investment.

Mt. Lebanon, however, seeks to tax the **increase in the value** of the shares of stock encompassed by the options from the time Marchlen was given the right to purchase the shares until he actually exercised that right. The record clearly indicates that the stocks did not increase in value as a result of *any* services that Marchlen performed for. ALCOA. Nor did the market value of the stock increase as part of any effort by ALCOA to compensate Marchlen for services rendered or as an incentive for Marchlen to increase his productivity at ALCOA. Rather, the value of the stock increased as a natural result of market forces; their value would have risen even if Marchlen no longer worked for ALCOA. Therefore, we conclude that the increase in the value of the stocks from the time that Marchlen received his options until

he exercised them is not earned income and, thus, is not subject to taxation under Mt. Lebanon's earned income tax.

■ Additionally, we note a problem with Mt. Lebanon's conclusion that the increase in value of the shares encompassed by the stock options constitutes earned income. Marchlen will not **realize** any gain from the stocks until he actually sells them. The term "realized gain" refers to a gain "resulting from an identifiable event, such as a sale or an exchange of property." *Black's Law Dictionary* 1264 (6th ed.1990). In the present case, Marchlen did not sell or exchange the shares of stock underlying the option. In essence, Mt. Lebanon seeks to tax presently a "paper gain"; a gain that will not be realized for tax purposes until an uncertain future date when Marchlen actually sells or otherwise disposes of the stock. Until that time, he has received nothing for the increase in the value of the stock and consequently has realized no gain. Furthermore, as we stated earlier, unless Marchlen immediately sold the stock after he exercised the option, he would not be guaranteed any certain economic gain due to potential fluctuation of the market price.

■ If Marchlen does sell the stock at a price higher than what he paid for it, he will, of course, realize an economic gain from the disposition of the stock. This realized gain, however, will be **investment income** which we have previously concluded is not subject to taxation under LTEA. *Pugliese; Scott.*

We hold, therefore, that the increase in the value of the stock encompassed by Marchlen's options from the time that the options were awarded until the time that he exercised the options is not earned income, as that term is defined in LTEA, and is thus not subject to Mt. Lebanon's earned income tax. Accordingly, we affirm the order of the Court of Common Pleas of Allegheny County.

### *ORDER*

**NOW,** February 20, 1998, the order of the Court of Common Pleas of Allegheny County

in the above-captioned matter is hereby affirmed.

LEADBETTER, J., did not participate in the decision in this case.