James A. NEWBREY

v.

The TOWNSHIP AND SCHOOL DISTRICT OF UPPER ST. CLAIR and Douglas A. Watkins, Township Manager, Appellants.

James A. NEWBREY, Appellant,

v.

The TOWNSHIP AND SCHOOL DISTRICT OF UPPER ST. CLAIR and Douglas A. Watkins, Township Manager.

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 1997.

Decided March 24, 1998.

Reargument Denied May 12, 1998.

Mark J. Christman, Pittsburgh, for appellants.

Jeffrey G. Aromatorio, Pittsburgh, for appellee.

Before DOYLE and SMITH, JJ., and NARICK, Senior Judge.

DOYLE, Judge.

Before this Court is the appeal of the Township and School District of Upper St. Clair and Douglas A. Watkins, the Township Manager, (collectively, Upper St. Clair) and the cross appeal of James A. Newbrey the June 24, 1997 order of the Court of Common Pleas of Allegheny County. Newbrey appeals from that part of the court's order which denied him counsel fees for the allegedly obdurate and vexatious conduct of Upper St. Clair during the proceedings. Upper St. Clair appeals from that part of the court's order which sustained Newbrey's appeal, concluding that the appreciation in the value of the stocks encompassed by Newbrey's non-qualified stock options[1] was investment income, and, therefore, was not subject to Upper St. Clair's earned income tax. The facts of this case, as they relate to the applicability of the earned income tax to non-qualified stock options are very similar to those in *Marchlen v. Township of Mt. Lebanon*, 707 A.2d 631 (Pa.Cmwlth.1998), and those facts require us to determine this appeal in a similar fashion.

The parties have stipulated to the essential facts underlying this appeal. Newbrey is an employee of PPG Industries, Inc. (PPG) and a participant in PPG's employee stock option plan. The plan is administered by the Officers–Directors Compensation Committee (Committee) which awards both non-qualified and incentive stock options to those which it considers to have the ability to contribute to the growth and success of PPG or its subsidiaries.

An employee who receives a non-qualified stock option must wait at least one year after the date on which the option is awarded to exercise the option, and after ten years the option expires. The option itself is not traded on a public exchange and may not be sold privately. In addition, the option is non-transferable except by a deceased employee's last will and testament or through the intestate laws of descent and distribution. As a result of these restrictions on its transfer, the option itself has no ascertainable market value. To exercise an option, the employee must pay PPG the stated amount per share that is set by the Committee at the time the option is awarded. The price per share can be no lower than the fair market value of the stock at the time the option is awarded.[2] In addition, the Committee may also grant a "restored option." A restored option is a non-qualified option which is granted to an optionee who exercises a new stock option using previously-owned shares of PPG stock. These options are granted for an identical number of shares that are surrendered to PPG in order to exercise the original option.

During the period from 1987 to 1993, Newbrey was awarded a total of thirteen non-qualified stock options which he ultimately exercised during random periods from 1992 to 1994. The number of shares, the date on which the option was granted, the date on which the option was exercised, the option price, and the fair market value at the date of exercise (FMV) are as follows:

---

1. A non-qualified stock option plan is one that does not meet the requirements of Section 401 of the Internal Revenue Code, 26 U.S.C. § 401, and, accordingly, is not entitled to special tax treatment under the federal tax law.

2. The fair market value of the stock would be the closing price of PPG stocks on the New York Stock Exchange, where the stock is traded, on the date of award.

| Option Number | Grant Date | Exercise Date | Number of Shares | Option Price | FMV |
|---|---|---|---|---|---|
| 1 | 2/11/90 | 3/19/92 | 2,500 | $ 98,750 | $147,789 |
| 2 | 2/16/89 | 5/20/92 | 1,600 | $ 69,600 | $103,898 |
| 3 | 2/17/87 | 12/09/92 | 1,050 | $ 45,806 | $ 67,594 |
| 4 | 2/19/91 | 6/23/93 | 3,400 | $185,300 | $233,750 |
| 5 | 2/18/92 | 12/23/93 | 12,650 | $208,798 | $266,106 |
| 6 | 2/18/92 | 2/9/94 | 5,000 | $293,750 | $395,000 |
| 7 | 2/17/93 | 6/30/94 | 5,000 | $165,000 | $187,500 |
| 8 | 12/9/92 | 6/30/94 | 1,650 | $ 53,212 | $ 61,875 |
| 9 | 2/18/92 | 8/23/94 | 8,192 | $240,640 | $323,079 |
| 10 | 02/17/93 | 12/30/94 | 7,368 | $252,054 | $283,041 |
| 11 | 2/17/93 | 9/15/95 | 762 | $ 25,146 | $ 35,528 |
| 12 | 12/30/94 | 9/15/95 | 2,614 | $ 97,045 | $121,877 |
| 13 | 6/23/93 | 9/15/95 | 5,874 | $201,919 | $273,877 |

All of the above options were non-qualified stock options. In addition, option numbers 3, 4, 5, 7, 8, 10, 11, 12, and 13 were restored options. Thus, Newbrey surrendered old shares of PPG stock in exchange for an identical number of PPG shares encompassed by the new options.

At all relevant times, Newbrey resided in the Township of Upper St. Clair. Pursuant to the authority of the Local Tax Enabling Act (LTEA),[3] Upper St. Clair imposes an earned income tax upon its residents. If the tax is not withheld by an employer, the taxpayer is required to file an earned income tax return indicating the amount of salary, wages, and compensation that he received which is subject to the tax. In tax years 1992 through 1995, Newbrey included the "spread"[4] of each of the options listed above.

In 1996, Newbrey timely filed an amended earned income tax return with Upper St. Clair for the tax years 1992, 1993, 1994, and 1995 in which he sought a refund of the tax attributable to the tax on the increase in value of the stocks encompassed by the above-listed stock options from the date on which they were awarded until Newbrey ex-

ercised them. On August 16, 1996, Upper St. Clair issued a determination which denied Newbrey's request for a refund and concluded that the increase in the value of the stocks encompassed by Newbrey's stock options was earned income, and, thus, was subject to taxation under LTEA. On September 12, 1996, Newbrey requested a hearing before the Township Manager.

On November 7, 1996, a hearing was held before the Township Manager, and Newbrey's counsel argued that Upper St. Clair's definition of earned income exceeded the scope of the definition in LTEA. Additionally, he argued that the increase in the value of the stocks encompassed by Newbrey's options was not earned income, but rather was investment income. In a January 22, 1997 letter, the Township Manager rejected Newbrey's arguments, and Newbrey appealed that determination to the Court of Common Pleas of Allegheny County.

On appeal to the Court of Common Pleas, the court scheduled a conference several days after the court issued a decision in the case of *Marchlen v. Township of Mt. Lebanon,* in which the court concluded that the

3. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§ 6901–6930.13.

4. The "spread" generally refers to the difference between two amounts. In the context of stocks, the spread is usually the difference between the bid and asking price of the stock. In the present case, the spread refers to the difference between

the cost of purchasing the stock at the value established at the time the option was awarded and the value of the stock on the day that Newbrey exercised his options; succinctly put, the "profit" realized between the cost of purchase and the value of the stock when the option is exercised.

increase in the value of non-qualified stock options did not constitute earned income subject to Mt. Lebanon's earned income tax, which is, in the ordinance adopting the earned income tax, essentially identical to Upper St. Clair's tax ordinance. Although Upper St. Clair could not distinguish its case from the *Marchlen* case and apparently was not prepared to offer new arguments, it nonetheless requested to file a supplemental brief rather than permit the court to rely solely on the materials filed by the parties with the Township Manager. As a result of Upper St. Clair's request, Newbrey requested reasonable counsel fees for Upper St. Clair's allegedly obdurate and vexatious conduct during the proceedings.

On June 24, 1997, Common Pleas issued an opinion applying the holding of this Court's decision in *Pugliese v. Township of Upper St. Clair*, 660 A.2d 155 (Pa.Cmwlth.1995), and reasoning that the non-qualified stock options in the present case were indistinguishable from the debentures at issue in *Pugliese*. The basis for this conclusion was that "[the debentures and the non-qualified stock options] grant an opportunity for the employee to participate in any appreciation in the value of the compan[y's] common stock. Both give the employee the decision to invest . . . which is separate from the receipt of compensation from the respective companies." (Opinion of the Court of Common Pleas at 6.) Therefore, the court reversed the determination of the Township Manager and held that the spread from the non-qualified stock options was investment income rather than earned income and, thus, not subject to the earned income tax. However, the court denied Newbrey's request for counsel fees.

On appeal to this Court,[5] Newbrey argues that the Court of Common Pleas correctly decided the substantive issue regarding the taxation of his stock options; however, he argues that counsel fees should have been awarded because of the obdurate and vexatious conduct of the Township during the proceedings. Specifically, Newbrey points out that Upper St. Clair continues to apply the identical expansive definition of earned

income which this Court struck down in *Pugliese*. In its cross appeal, Upper St. Clair argues that the Common Pleas Court incorrectly determined that the increase in value of the stocks encompassed by Newbrey's stock options was not earned income. In addition, Upper St. Clair argues that an award of counsel fees in this case would be improper because the trial court did not make a specific finding of obdurate or vexatious conduct on the part of Upper St. Clair. Because the award of counsel fees is, at least in part, contingent upon our determination of the applicability of the earned income tax to Newbrey's stock options, we will address Upper St. Clair's appeal first.

Upper St. Clair argues that Newbrey's non-qualified stock options constitute earned income. Specifically, Upper St. Clair offers two bases for this conclusion: (1) the state revenue code treats the appreciation of such options as "compensation"; and (2) the options constitute compensation for services rendered such that they are earned income subject to taxation by Upper St. Clair.

Section 13 of LTEA, 53 P.S. § 6913, authorizes political subdivisions of the Commonwealth to impose a tax on the earned income of its residents. This section defines earned income as follows:

> "Earned Income." Salaries, wages, commissions, bonuses, incentive payments, fees, tips, and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property. . . .

53 P.S. § 6913. The introductory language to this section provides as follows:

> The definitions contained in this section shall be exclusive for any tax upon earned income and net profits levied and assessed pursuant to this act, and shall not be altered or changed by any political subdivision levying and assessing such tax.

*Id.* Thus, a political subdivision may not expand the definition of earned income. By ordinance, Upper St. Clair imposes an tax on "all earned income and net profits, as defined in Section 13 of the Local Tax Enabling Act

---

5. Our standard of review in a tax appeal case is limited to whether the trial court abused its discretion, committed an error of law, or issued

a decision unsupported by substantial evidence. *Scott v. Hempfield Area School District*, 164 Pa. Cmwlth. 588, 643 A.2d 1140 (1994).

(53 P.S. § 6913)...." Upper St. Clair Code § 118.17. By regulation, Upper St. Clair has adopted a definition of earned income identical to LTEA's definition, but with the following additional language:

> Earned income includes any item that is currently reportable on the Commonwealth of Pennsylvania Department of Revenue Form PA 40 "Gross Compensation" line, any item that is correctly reportable on the "Wages, Salaries, Tips, Etc." line of the IRC Form 1040 or any item that is correctly reportable on the "state wages, tips, etc." box of IRC Form W–2 and that portion of distributed or distributable S Corporation income that represents compensation for services rendered. Examples include but are not limited to: income derived from exercising non-qualified stock options; financial counseling services reimbursement; excess life insurance; spouse's travel reimbursement; moving expense reimbursement; and, mortgage differential.

Township of Upper St. Clair Regulation 1.1.12.[6]

■ In support of a reversal of the trial court, Upper St. Clair cites several Pennsylvania Revenue Code sections which explicitly provide that stock options are a form of "remuneration" for services rendered. This argument was also offered by Mt. Lebanon in the *Marchlen* case. Because the facts in this case are identical to those in *Marchlen*, with the only exception being that in this appeal Newbrey exercised several of his options by surrendering existing shares of PPG stock which he owned, we reach the same conclusion that the increase in the value of stock encompassed by a non-qualified stock option does not constitute earned income under LTEA and, therefore, is not subject to a political subdivision's earned income tax. In doing so, we reiterate our observation that if the General Assembly wishes to include the increase in the value of stocks encompassed by a stock option as earned income under LTEA and, thus, broaden the definition of earned income to mirror the treatment of

such property to that of the Commonwealth Revenue Code, it may do so, but it is not within the province of this Court to make such an amendment. *Scott.* Because we reach such a conclusion, we are obliged to review the trial court's decision not to assess counsel fees under Section 2503 of the Judicial Code, 42 Pa.C.S. § 2503.

■ Section 2503(7) provides that "[a]ny participant who is awarded counsel fees as a sanction against another participant for dilatory, obdurate or vexatious conduct during the pendency of a matter" is entitled to counsel fees. It is, of course, well settled that the reasonableness of a refusal to grant counsel fees in a particular case rests within the sound discretion of the trial court. *West v. Hampton Township Sanitary Authority*, 661 A.2d 459 (Pa.Cmwlth.1995). Therefore, this Court has refused to alter such a decision absent a showing of a clear abuse of discretion. *Id.*

Moreover, in *Township of South Strabane v. Piecknick*, 546 Pa. 551, 686 A.2d 1297 (1996), our Supreme Court concluded that an award of counsel fees under Section 2503 is inappropriate absent a specific finding by the trial court that a party's conduct was dilatory, obdurate, and vexatious. In the case presently before us, the trial court did not make such a finding, and, therefore, counsel fees are inappropriate under Section 2503.

■ However, although counsel fees in the present case are not appropriate at the trial court level, **this** Court may impose counsel fees

> if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule.

Pa. R.A.P. 2744. This Court may impose counsel fees on an appellant on the motion of

---

**6.** Upper St. Clair's tax ordinance, defined "earned income" as that term is defined in LTEA. However, by subsequent regulation, Upper St. Clair made part of Upper St. Clair's Code

by Section 118.18, the definition was expanded as noted in the above text. There is no dispute that the regulation quoted above is identical to the regulation quoted in *Pugliese.*

a party or *sua sponte* by the Court. *Borough of Kennett Square v. Lal*, 165 Pa. Cmwlth. 573, 645 A.2d 474, *petition for allowance of appeal denied*, 540 Pa. 613, 656 A.2d 119 (1994).

■ We conclude that the Township's conduct in appealing the trial court's order in the present case compels us to impose counsel fees on Upper St. Clair. In *Pugliese*, this Court decided an issue **which is identical** to the position that Upper St. Clair once again presents to this Court. *Pugliese* involved an appeal where a taxpayer received deferred compensation which was put into convertible debentures. In essence, Pugliese purchased the debentures with the money that he deferred. Upper St. Clair sought to tax the increase in the value of the debentures, a practice which this Court specifically indicated was not within the authority granted by LTEA. Similarly, in the instant appeal, Newbrey paid for several options with his own funds and did not receive the shares of stock as compensation. Moreover, in the case of the restored options, Newbrey relinquished previous investments in order to purchase the new shares.

Upper St. Clair again presents an appeal where a taxpayer has paid for investment property with his own money and has benefited from the increase in value of that investment. In *Pugliese* we specifically held that Upper St. Clair, the appellant now before us, was not legally permitted to tax the increase in value of the debentures. Upper St. Clair nevertheless persists in arguing that it has the authority to tax an indistinguishable increase in value of the shares encompassed by the non-qualified stock options at issue in this case; and we further note that Upper St. Clair continues to assert its authority to tax this increase in value without proposing any new or additional legal justifications for doing so.

Even more troubling is the fact that Upper St. Clair's regulation which defines earned income **is identical** to the one that we specifically struck down as an impermissible expansion of LTEA's definition of earned income in *Pugliese*. Apparently in defiance of this Court's decision in *Pugliese*, Upper St. Clair continues to use this expansive defini-

tion of earned income, purportedly for "illustrative or descriptive purposes." However, this description, which purports to provide specific examples of earned income, is not only misleading to the taxpayer, but is also contrary to existing case law, *i.e.*, *Pugliese*, litigation to which Upper St. Clair was a party. Consequently, we believe that this facet of the instant appeal, by itself, evinces such obdurate conduct that it more than adequately justifies the awarding of counsel fees. Therefore, in assessing counsel fees against Upper St. Clair, we now make abundantly clear that the definition of earned income contained in its regulation, insofar as it deviates from and expands the definition of earned income contained in LTEA, impermissibly taxes the increase in value of investment income, whether it be in the form of debentures or non-qualified stock options.

Accordingly, we affirm the trial court's order in its entirety, but remand the case to the trial court for the calculation, after a hearing, of reasonable fees incurred by Newbrey in this appeal to be paid by Upper St. Clair.

### *ORDER*

**NOW**, March 24, 1998, the order of the Court of Common Pleas in the above-captioned matter is hereby affirmed. Further, the case is remanded to the trial court for calculation, after a hearing, of reasonable attorney's fees incurred by Appellant Newbrey in this appeal to be paid by Appellee Upper St. Clair.

LEADBETTER, J., did not participate in the decision in this case.