769 A.2d 1165

**James L. FISHER, Appellee,**

v.

**Patricia A. FISHER, Appellant.**

Supreme Court of Pennsylvania.

Argued April 26, 1999.

Decided April 25, 2001.

Allen H. Smith, York, for Patricia A. Fisher.

Daniel M. Fennick, York, for James L. Fisher.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION OF THE COURT

FLAHERTY, Chief Justice.

The sole issue in this equitable distribution case is to determine the proper disposition of employee stock options which had been granted to one spouse during coverture but had not vested [1] and could not have been exercised during the marriage.

The Fishers married in 1984, separated in 1993, and divorced in 1994. During the marriage, Mr. Fisher worked as an executive officer for the Harley Davidson Corporation in Allentown, Pennsylvania. One of the perquisites of the position was the periodic award of stock options. Mr. Fisher routinely exercised the options when they vested. At the time the parties separated in 1993, Mr. Fisher had redeemed all the options which had vested, but during the period of the separation and before the divorce, he received more options and some of the options he had received prior to the separation vested. It is only the options received prior to the parties' separation that are at issue in this case. [2]

After Mr. Fisher filed a complaint in divorce, the parties requested that the court bifurcate the divorce from the equitable distribution of marital property and appoint a master to address the property issues.

The divorce master, following conferences and hearings, made a report and recommendation to the trial court regarding marital property issues. The master placed the value of Mr. Fisher's stock options at $71,000; he recommended that Mr. Fisher retain the options and that Mrs. Fisher be compensated for her interest in the options via the immediate offset method. Both parties excepted to the values assigned

1. Both parties use the term "vesting" to refer to the time when all conditions attached to the stock options have been satisfied and the options may be exercised. In this opinion, the term is used in the same sense.

2. "[T]he Divorce Code excludes property acquired after the date of separation from consideration as marital property." *Berrington v. Berrington*, 534 Pa. 393, 399, 633 A.2d 589, 592 (1993); 23 Pa.C.S. § 3501(a)(4).

to Mr. Fisher's Harley Davidson stock options and to the master's recommended disposition.

The trial court found that the value of the options was too speculative to merit inclusion in the marital assets subject to distribution, citing *Powell v. Powell*, 395 Pa.Super. 345, 577 A.2d 576 (1990) and *McGinley v. McGinley*, 388 Pa.Super. 500, 565 A.2d 1220 (1989). The court noted that possibilities such as Mr. Fisher's death or the termination of his employment with Harley Davidson would terminate the options as well; these possibilities make unvested options mere expectancies with no ascertainable value. The court also noted that the value of the unvested options ascribed by the master rested on the assumption that Mr. Fisher would have the means and inclination, on the date of vesting, to exercise the options. Again, this assumption, though reasonably likely, is not a foregone conclusion. Rejecting the master's recommended value of $71,000 because it was based on such assumptions, the trial court instead assigned a value, for equitable distribution purposes, of zero.

Superior Court affirmed, reasoning that "stock options 'themselves have no ascertainable value,'" citing *Marchlen v. Twp. of Mt. Lebanon*, 707 A.2d 631 (Pa.Cmwlth.1998).[3] The court therefore held that the trial court did not abuse its discretion in determining that the options should be valued at zero for purposes of equitable distribution of marital property.

Mrs. Fisher, appellant, urges this court to reverse Superior Court and to hold that the unvested stock options constitute marital property and are subject to distribution. A key element of her argument is that every sister jurisdiction which has considered the question treats unvested pensions the same as unvested stock options. Since Pennsylvania law includes unvested pensions as marital property, we should hold that unvested stock options are likewise marital property. She cites as examples *Pascale v. Pascale*, 140 N.J. 583, 660 A.2d 485 (1995); *Green v. Green*, 64 Md.App. 122, 494 A.2d 721

---

**3.** Since the Superior Court decision in this case citing *Marchlen*, this court reversed *Marchlen* on other grounds. *See* 560 Pa. 453, 746 A.2d 566 (2000).

(1985); and *In re Hug*, 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (1984). She asks us to order immediate distribution and suggests that the value recommended by the master should be used. Her brief states that "[i]mmediate offset would enable the case to be closed without further court supervision...." She (and many courts) consider both unvested stock options and unvested pension benefits to be forms of compensation earned during the marriage.

Appellee husband, conversely, takes the position that because the stock options are mere expectancies, Superior Court was correct in excluding them from the marital estate subject to distribution. He argues (1) that unvested stock options have no present value and may not be bought or sold and thus do not meet the statutory definition of "marital property" set forth in 23 Pa.C.S. § 3501(a) or "property" as defined by the law of Pennsylvania; (2) that, unlike pension benefits, "stock options are usually awarded to the employee by the employer as an inducement to remain in the corporation's employ"; (3) that, unlike pension benefits, "the employee expends no funds to secure [the stock options.]"; and (4) the better analysis would be to treat unvested options the same way as an expectancy under a will. He states: "While such a circumstance may give rise to an expectation on the putative legatee's part, there is no assurance that the said putative legatee will, in fact, inherit anything, due to the vagaries of chance, such as the testator changing his will prior to death." He argues that stock options, similarly, are expectancies "in that they may be terminated prior to vestiture by any number of circumstances, including the corporate employer's bankruptcy, or termination of employment by the option holder."

■ Thus we must decide, first, if the unvested stock options are marital property, and second, if they are, how they should be distributed.

We agree that stock options are a form of deferred compensation which has been earned by the employee. Appellee's argument is that options are awarded to induce the employee to remain in his present employment and that he expended no

money to acquire the options. The same, however, can be said of most pension benefits, though pension benefits, like stock options, have a cost to the employer which is paid as a salary substitute, for employees' compensation would arguably be higher were it not for employment benefits such as these. And, of course, all compensation and benefits are intended, in part, to induce employees to remain with the employer. Moreover, appellant argues persuasively that unvested stock options are analytically identical to unvested pensions and both should be considered marital property. She points out that an unvested pension's value is speculative because the pension beneficiary may, in some circumstances, receive absolutely no payments due to a variety of reasons, and these reasons are materially identical to those already discussed which make the value of unvested stock options so questionable and speculative. She bolsters this argument with the assertion that every sister jurisdiction which has considered the question has reached the same conclusion. We have independently researched the decisions of our sister states which have decided the issue, and appellant appears to be correct in stating that they are unanimous, or nearly so, in treating unvested stock options identically with unvested pensions. Such uniformity in approach is persuasive, and we use the same approach. It seems the most logical means of dealing with expectancies not susceptible to precise present evaluation. We therefore conclude that the Fishers' stock options earned during their marriage prior to separation must be considered to be marital assets.

■ The best means of distributing the stock options presents more difficulty.

We agree with the trial court and Superior Court that it is impossible to ascribe a meaningful value to the unvested stock options, primarily because it is absolutely impossible to predict with reliability what any stock will be worth on any future date. Ascription of a value to a stock option before it vests is impermissibly speculative. On the other hand, to omit the asset from equitable distribution, as Superior Court did, is clearly inequitable. When there is a reasonable possibility

that the asset will be of value in the future, then the spouses should share that worth in proportions deemed to be equitable in view of the factors set forth in 23 Pa.C.S. § 3502(a), pertaining to division of marital property. Lack of certitude does not justify excluding Mrs. Fisher from enjoyment of expected benefits: this would provide a totally unjustified windfall to Mr. Fisher if and when a profit is realized.

Recognizing that the stock options at issue in this case are expectancies, as opposed to assets which have a readily ascertainable present value, we must decide the proper disposition of the options.

Several alternative approaches to assets of this type are presented.

One is the "deferred distribution" approach. It would exclude the options from the present distribution but hold the case open as long as necessary to ascertain the values of options on the future dates when they may be exercised and then distribute those values in an equitable way. There are sound reasons to avoid this approach due to its drawback of necessitating ongoing future proceedings and preventing finality and certainty in the litigation.

A second approach would be to establish a present value for the options and to distribute that value in accordance with each party's marital proportion determined appropriate to effectuate economic justice between the parties. This is the "immediate offset" method, the method recommended by the master. Unlike the "deferred distribution" method, the second approach has the commendable quality of finality because it makes a final disposition at the time of distribution, and need not take account of future fluctuations in stock prices or other contingencies which may affect the value on the dates when the stock options may be exercised. On the other hand, the immediate offset method requires that the value of the asset be known. We have determined supra that no value for unvested stock options can be established without unjustifiable assumptions which render the value impermissibly speculative. This approach, therefore, is not viable in this case.

A third approach would be to distribute the options themselves according to the parties' marital proportions: the value of the options would then be immaterial, for regardless of how little or how much the options are worth, the parties would share their value in the proper proportions and, significantly, there would be no need for the court to participate in future transactions involving the options. This approach appears to avoid the drawbacks of both deferred distribution and immediate offset. Unfortunately, again, this approach cannot be used in this case. The immediate distribution of the Fishers' stock options appears to be impossible. Mr. Fisher's options are nontransferable. They must be exercised while he is still in the employ of Harley Davidson. They will not survive his death. The options are indivisible.

It appears, therefore, that deferred distribution is unavoidable in this case, despite the sacrifice of finality. It will be necessary, in the order of distribution, to require Mr. Fisher to provide notice and render an accounting when he exercises any of the options and to report the profits,[4] if any, realized upon exercise.

■ The possibility has been raised that a vindictive option-holder might decline to exercise options when they vest, despite the possibility of realizing a profit, merely to spite his former spouse and to avoid sharing any profit with her. A possibility has also been raised that a recklessly speculative option-holder might decline to exercise options when they vest, despite the possibility of realizing a profit, due to a peculiarly optimistic hope that their market value will continue to rise until they expire so the options might produce an even greater profit. On the basis of these theoretical possibilities, it has been urged that Mr. Fisher be required to exercise the options when they vest, or at the earliest date when they will yield a profit. We decline to order such a disposition.

Unreasonable or spiteful spouses are not altogether unknown to trial courts charged with adjudicating the multifari-

---

4. Profit is defined as the market value of the stock purchased, less the purchase price and any applicable financing costs.

ous issues arising under the divorce code. The court of common pleas will have jurisdiction over the equitable distribution of the Fishers' marital assets until all of the assets have been distributed; we have already determined that the stock options or their value cannot be distributed at the present time. Mrs. Fisher will be able, so long as options acquired during her marriage may yet be exercised, to petition the court if she has evidence that Mr. Fisher has violated 23 Pa.C.S. § 3102(a)(6) (policy of effectuating economic justice between parties who are divorced) or otherwise deprived her, under principles of equity, of assets she is entitled to receive. The theoretical possibility of such vicissitudes does not justify the court to enjoin the option-holder to any specific future limitations on his rights, granted by Harley Davidson Corporation, with regard to exercise of the stock options.[5]

On the basis of these considerations, the order of Superior Court is vacated and the case is remanded for further proceedings consistent with this opinion.

Justice NEWMAN files a concurring opinion.

Justice NIGRO files a concurring and dissenting opinion.

Justice SAYLOR files a concurring and dissenting opinion.

NEWMAN, Justice, concurring.

I agree with the Majority that stock options earned during the marriage prior to separation are marital assets subject to equitable distribution. I also agree that where possible, courts should distribute marital property at one time, thus precluding future proceedings, avoiding undue financial dependency between former spouses and enabling the parties to go on with their lives. Valuing stock options is an important step in this process because once a trial court determines what the

---

5. The question has been raised of what should be done if Mr. Fisher allows options to expire without being exercised though he could have realized a profit on them. This, too, is a speculative possibility not presented by the facts of record. Should such a contingency arise, we are confident that the trial court is competent to render an equitable decision based on the evidence presented to the court.

options are worth, it can assign their value to the option-holding spouse's portion of the marital assets. It can then compensate the non-option-holding spouse by granting to him or her a corresponding amount of transferable marital property such as real estate, stocks and cash. Because such a resolution is not feasible in this case, I believe, as does the Majority, that the deferred distribution approach is appropriate. However, I write separately to note that because we prefer immediate distribution whenever possible, our trial courts should be open minded when presented with expert testimony regarding ways to place a present value on unvested stock options.

In the instant matter, the sole evidence provided to the trial court was that during the marriage, but prior to separation, Husband received 4,449 Harley–Davidson stock options that remained unexercised. Wife's expert witness testified that on November 2, 1995 (a date close to the master's hearing) the value of a share of Harley–Davidson stock was $27.00, thus yielding a total value of $120,123.00 for 4,449 shares. From this number he deducted the total strike price of the options ($49,480.29) giving a net value of $70,642.71. This was a net figure without any consideration of taxes. The trial court rejected the valuation because the expert assumed that the stock would be worth $27.00 per share on the date when Husband actually had the right to purchase it. Considering this too speculative, the trial court determined that the options had no ascertainable value. Therefore, the trial court noted that the expert's failure to consider the tax implications was irrelevant.

Here, the trial court rejected what has been called the intrinsic value method. The Supreme Court of Nebraska in *Davidson v. Davidson*, 254 Neb. 656, 578 N.W.2d 848, 858 (1998), defined the intrinsic value method as "the market value of the stock, less the exercise cost of the option and any applicable financing costs". This method has been applied in *In re Marriage of Hug*, 154 Cal.App.3d 780, 201 Cal.Rptr. 676 (1984) and *Richardson v. Richardson*, 280 Ark. 498, 659 S.W.2d 510 (1983). The Majority appears to believe that the

intrinsic value method is too speculative, and I agree. In light of the fact that the only evidence presented to the trial court regarding the value of Husband's stock options was based on the intrinsic value method, the Majority correctly holds that a deferred distribution must be ordered in this case. I write separately to emphasize that as a general rule courts are not necessarily confronted with a simple choice of either the intrinsic value method or deferred distribution. There are other more sound and sophisticated ways to value stock options, and if expert testimony is provided to support valuations, it is within the province of the trial court as fact finder to accept or reject such testimony.

One way to determine the value of stock options is the discount to present value method. In a recent decision, *Hansel v. Holyfield*, 779 So.2d 939 (La.App. 4th Cir.) the Court of Appeal of Louisiana affirmed a trial court's valuation of stock options based on the expert testimony of an actuary who applied the present value discount method. As explained in *Wendt v. Wendt*, 1998 WL 161165 (Conn.Super.), the discount to present value approach starts with the intrinsic value, as explained above, and applies discounts to determine present value. As an example, the *Wendt* court cited to an unpublished New York decision, affirmed without opinion in *Evans v. Snyder*, 197 A.D.2d 389, 603 N.Y.S.2d 740 (1993). In that case, financial experts applied three discounts for (1) tax due upon sale; (2) lack of marketability; and (3) risk of forfeiture to 12,500 shares of restricted stock. This reduced the intrinsic value from $3,837,500.00 to a present value of $1,654,730.00.

Although there are no published appellate decisions from Pennsylvania courts applying the discount to present method value to stock options, it has long been applied for determining the present value of the marital portion of a pension. In *DeMasi v. DeMasi*, 366 Pa.Super. 19, 530 A.2d 871, 886 (1987) the Superior Court set forth how this method is used to calculate the present value of a pension:

1. Calculate the amount of husband's monthly pension benefit, assuming he was at age sixty-five on ... the date of separation.

2. Find husband's life expectancy at the time of separation and subtract his normal retirement age to determine the expected number of months of pension benefits.

3. Select an appropriate discount rate.

4. Find the value of the annuity at age 65.

5. Discount the value at age 65 to present value accounting for mortality, disability and termination.

6. Reduce present value of the plan if it has not yet vested.

7. Apply the coverture fraction if a portion of the pension was earned before marriage.

When expert witnesses calculate the present value of stock options based on application of similar principles, I believe that it is within the discretion of the trial court to order immediate distribution of the asset.

Another well-known model for valuing stock options is the Black–Scholes valuation method. "The Black–Scholes option-pricing model is a standard model used by analysts for pricing options. Fisher Black and Myron Scholes, the developers of the model, won Nobel Prizes in economics following the development of the model." *In re The Coleman Company, Inc. Shareholders Litigation,* 750 A.2d 1202 (Del.Ch.1999). "It . . . is a complex formula which takes into consideration: (1) the volatility of stock prices, (2) the record of its dividends, (3) the exercise price of the stock, (4) the current market value of the stock, and (5) computes all of this in a lognormal formula." *Wendt* at *195. Although a Connecticut trial court has opined that the Black Scholes method is inappropriate for evaluating stock options in a marital context, *Chammah v. Chammah,* 1997 WL 414404 (Conn.Super.1997), the Supreme Court of Nebraska in *Davidson,* supra. held that a trial court did not abuse its discretion by using the Black–Scholes method to value the husband's employee stock options.

I have discussed discounting to present value and the Black Scholes model simply to illustrate that there are alternatives to the unacceptably speculative intrinsic value method employed by Wife's expert in this case. Regrettably, because the record is void of any testimony supporting another method of

valuation, I am compelled to agree with the Majority that deferred distribution is appropriate in this matter. This is unfortunate, because it means that the parties' mutual financial dependence continues after the termination of their marriage. However, I reiterate that if parties provide the trial court with expert testimony that cogently sets forth how a present value can be assigned to stock options, it is within the court's discretion to accept that testimony and order immediate distribution of the marital assets.

NIGRO, Justice, concurring and dissenting.

I agree with Mr. Justice Saylor's Concurring and Dissenting Opinion that the question of whether particular stock options represent marital property should depend on the characteristics of the stock option plan at issue, and, thus, must be decided by the trial court in light of the particular stock option plan. I write separately, however, to address the issue of how those stock option plans that are found to be marital property by the trial court, but mature after separation and equitable distribution, should be valued and distributed.[1] Contrary to the Majority, I do not believe that the non-holding spouse, in this case Ms. Fisher, should only be able to receive her marital share of the options' value when the holding spouse exercises the options.

While the nature of stock options necessarily means that the holder of the options has the "option" of exercising them at her discretion, the fact that the options are marital property also means that both spouses, not merely the holding spouse, possess a property interest in the options' value. Given this property interest, the non-holding spouse should, in my view, clearly have some say as to when the options are exercised. I would therefore find that the non-holding spouse should have

1. For the purpose of this opinion, a stock option "matures" when the option holder has the absolute right to purchase the stock at the option price. A stock option is "exercised" when the option holder actually purchases the stock at the option price. Prior to maturing, a stock option cannot be exercised.

the choice of whether or not she wishes to receive her marital share of the options' value when those options mature. If the non-holding spouse chooses not to receive her marital share of the options' value on the date of maturity, the non-holding spouse must then wait until the holding spouse exercises the options in order to receive her marital share of the value.

This "either or" method provides for a fair and balanced treatment of each party's property interest in the options and furthers the legislative policy of "effectuat[ing] economic justice" between the parties. See 23 Pa.C.S. § 3102(a)(6). For example, a non-holding spouse may believe that the value of the options will not increase subsequent to the date of maturity. Thus, that spouse would likely choose to receive her marital share of the options' value at that time. At the same time, if the non-holding spouse believes that the options' value will increase after maturity, she would likely want to hold on to the property interest in the options until the holding spouse exercises the options. If, however, the non-holding spouse chooses to wait until the options are exercised, the holding spouse can then exercise the options at his discretion.[2]

Allowing the non-holding spouse to chose to value the options on either the date of maturity or the date of exercising serves the dual purpose of acknowledging the holding spouse's property interest in the options and avoiding protracted litigation and court involvement. If the non-holding spouse chooses not to receive the options' value at maturity, the "either or" method recognizes the holding spouse's interests by allowing the holding spouse to exercise the options at his discretion. In addition to providing for the holding spouse's interests, the "either or" method avoids a burdensome, on-going court entanglement. By limiting the non-holding spouse's choice of valuation to either the date of maturity or the date of exercising, the non-holding spouse is, for example, precluded from

2. If the option-holding spouse allows the options to expire without exercising them, I believe that fairness requires that the option-holding spouse pay the non-holding spouse her marital share of the options' value, if any, on the date of expiration.

seeking her share of the options in increments, e.g., choosing to receive ten percent of her marital share of the options at maturity, and then returning to court the next week and requesting another ten percent, and so on. Such protracted and on-going litigation would unduly burden both the holding spouse and the court system.

In sum, I join the Majority in reversing the Superior Court's order since I believe that stock options can be marital property, but I dissent from the Majority's formula for distributing those options that are found to be marital property.

SAYLOR, Justice, concurring and dissenting.

I join the majority's decision to reverse the Superior Court's order, as I agree that employer-provided stock options can be marital property. Since stock option plans diverge widely among employers, however, I am not prepared to follow the categorical approach urged by the parties, namely, that all stock options must either be marital property or not. Rather, in my view, the determination of whether, and to what extent, particular stock options represent marital property should depend upon the characteristics of the plan in question, and, thus, must necessarily be made by the trial courts in the first instance in light of the particular circumstances presented.[1] This is the thrust of the Superior Court's discourse in *MacAleer v. MacAleer*, 725 A.2d 829, 831 (Pa.Super.1999), *appeal granted* 559 Pa. 692, 739 A.2d 1058 (1999),[2] and the approach

---

**1.** For example, it would be difficult to characterize as deferred compensation for services rendered a plan that is expressly structured so that the options are in exchange for future services; is conditioned upon some qualitative assessment of future performance; and/or is unilaterally revocable at the sole discretion of the employer prior to maturity. More commonly, stock options may be awarded by an employer in part as compensation for services rendered and in part as an incentive to future performance. In such a case, it may be appropriate to apportion the option or options between marital and non-marital property. *See generally MacAleer*, 725 A.2d at 831; *DeJesus*, 665 N.Y.S.2d at 40, 687 N.E.2d 1319; *Miller*, 915 P.2d at 1319; *Hug*, 201 Cal.Rptr. at 678.

**2.** Although this Court allowed appeal in *MacAleer*, the appeal was subsequently discontinued on praecipe of the appellant.

followed by many other jurisdictions. *See, e.g., DeJesus v. DeJesus,* 90 N.Y.2d 643, 665 N.Y.S.2d 36, 40, 687 N.E.2d 1319 (1997) (citations omitted); *In re Miller,* 915 P.2d 1314, 1319 (Colo.1996); *In re Hug,* 154 Cal.App.3d 780, 201 Cal.Rptr. 676, 678 (1984). As noted in *MacAleer,* this form of fact-specific assessment is necessary to effectuate economic justice between the parties and assure a fair and just determination and settlement of their property rights. *See MacAleer,* 725 A.2d at 835 (citing 23 Pa.C.S. § 3102(a)(6)).

I read the majority's legal holding—that stock options earned during the marriage prior to separation must be considered marital assets—as being consistent with the above and with *MacAleer.* The majority's decision, however, to characterize the stock options under consideration as marital property would appear to entail application of a *per se* rule (or at least a presumption that stock options that are "granted" are "earned"), since there is no discussion of factual circumstances making it more or less likely that such options are wholly attributable to compensation for services rendered. Indeed, because the parties took a categorical approach to the issue before the master, in the trial court and on appeal, the record contains scant evidence from which the precise nature of the options could be determined.

*MacAleer* expressly notes that it does not purport to address those instances where a stock option represents both compensation for past services and consideration for future services, *see id.* at 835, and I believe that a similar reservation would be appropriate in the present case. Development of principles to guide the trial courts in the apportionment of stock options between marital and non-marital property will require a close examination of "competing considerations of law and equity, predictability and flexibility, past versus future services, and accrual outside of and within the marriage." *DeJesus,* 665 N.Y.S.2d at 40, 687 N.E.2d 1319. Given such considerations, and the many and varied models presented by other jurisdictions, *see generally* Annotation, *Divorce and*

*Separation: Treatment of Stock Options for Purposes of Dividing Marital Property,* 46 A.L.R.4th 640 (2000), the inquiry presents complexities of the sort that are best addressed where the Court has the benefit of fully-developed, informed advocacy. Therefore, where, as here, the parties overlook the possibility of a case-specific inquiry and thus do not provide the requisite advocacy, I would merely remand with directions to the trial court to determine whether and to what extent the stock options at issue were earned during the marriage and prior to separation.[3]

Finally, with regard to the valuation, I agree with the majority's general approach in evaluating the particular circumstances of the case to select the method most suitable to achieve a just and fair result between the parties. Nevertheless, I would also relegate this function, in the first instance, to the trial court, subject to appellate review; thus I would include resolution of the valuation question within the mandate for remand.

---

3. I do note that I would not foreclose the possibility of implementing a rebuttable presumption that stock options that are "granted" or "awarded" have been earned, based on the proposition that the party who has been granted or awarded an option is in the best position to develop its precise characteristics on the record. Before acceding to this or any other position, however, I would want to consider the range of available options as developed in an appropriate case.