746 A.2d 566

**Louis Thomas MARCHLEN, Appellee,**

v.

**The TOWNSHIP OF MT. LEBANON and John C. Ferguson, Jr., Township Treasurer, Appellants.**

Supreme Court of Pennsylvania.

Argued March 9, 1999.

Decided Feb. 22, 2000.

454

Joseph M. Ramirez, James H. Roberts, John R. Owen, III, Pittsburgh, Sandy B. Garfinkel, Eckert, Seamans, Cherin & Mellott, LLC, for Township of Mt Lebanon.

J. Ross McGinnis, for Amicus-Earn Income Tax Officers, Admin. & C.

Thomas L. Wenger, Wix Wenger & Weidner, Harrisburg, for Amicus-Pa. Sr. Assoc. of Twp. Supervisors.

Jeffrey G. Aromatoria, Christopher Zettlemoyer, Reed, Smith, Shaw & McClay, for Amicus-James Newbrey.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## *OPINION*

ZAPPALA, Justice.

We granted allocatur in this case to consider a question of first impression, that is, whether stock options issued to an employee pursuant to a stock option plan constitute compensation to the employee that may be taxed by a political subdivision as earned income under the Local Tax Enabling Act (LTEA).[1]

*Pro se* Appellee, Louis Thomas Marchlen, is an employee of the Aluminum Company of America (ALCOA) and a participant in ALCOA's employee non-qualified stock option plan.[2] On July 6, 1984, Appellee was granted a non-qualified stock option[3] to buy 500 shares of ALCOA stock at a price of $33.5625 per share, the fair market value of the stock on the day the option was granted.[4] On July 12, 1985, Appellee was

1. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§ 6901–6930.13.

2. A non-qualified stock option plan is one that does not meet the requirements of Section 401 of the Internal Revenue Code, 26 U.S.C. § 401, and is not entitled to special federal tax treatment.

3. An ALCOA employee who receives a non-qualified stock option must wait at least one year after the date on which the option is granted in order to exercise it, with the option expiring after ten years. As a condition of the award, an employee must remain with ALCOA for one continuous year after being awarded the option. The option itself is non-transferable except by a deceased employee's last will and testament. To exercise the option, the employee must pay ALCOA the stated amount per share that is set by the stock option committee at the time the option is awarded.

4. The fair market value of the stock is its closing price on the New York Stock Exchange.

granted the option to purchase 600 additional shares at a price of $33.8125 per share.

On May 31, 1994, Appellee exercised the 1984 option, purchasing 500 shares of ALCOA stock for $16,781.25. When Appellee exercised the 1984 option, the fair market value of the 500 shares was $35,281.25, resulting in a $18,500 "spread." [5] On July 3, 1995, Appellee exercised the 1985 option, purchasing 1200 shares [6] of ALCOA stock for $20,-287.56. When Appellee exercised the 1985 option, the fair market value of the 1200 shares was $60,600, resulting in a $40,312.44 spread.

Appellee resides in Mt. Lebanon Township, Allegheny County. Pursuant to the authority of the LTEA, Mt. Lebanon imposes an earned income tax upon its residents. On his 1994 Mt. Lebanon earned income tax return, Appellee did not include the $18,500 spread from his exercise of the 1984 option as income. By letter dated October 25, 1995, John C. Ferguson Jr., Mt. Lebanon Township Treasurer, informed Appellee that the $18,500 attributable to the exercise of the 1984 option should have been included as earned income on Appellee's 1994 return. Appellee disagreed and requested a hearing. At the conclusion of hearings held on April 30 th and July 25 th, 1996, the treasurer determined that the $18,500 attributable to Appellee's exercise of the 1984 option was subject to Mt. Lebanon's earned income tax.

Similarly, on his 1995 Mt. Lebanon earned income tax return, Appellee did not include the $40,312.44 spread from his exercise of the 1985 option as income. By letter dated August 16, 1996, the treasurer informed Appellee that the $40,312.44 attributable to the exercise of the 1985 option should have been included as income on his 1995 return.

5. The "spread" is the amount, at the time the option is exercised, by which the fair market value of the stock exceeds the purchase price.

6. Although the 1985 option originally granted Appellee the option to purchase 600 shares, in February of 1995, ALCOA shares split so that Appellee's unexercised option permitted him to purchase 1200 shares, rather than 600. The split also reduced the purchase price per share from $33.5625 to $16.9063. Appellee had already exercised his 1984 option prior to the stock split.

Appellee filed a statutory appeal of both his 1994 and 1995 earned income tax filings with the Court of Common Pleas of Allegheny County. Based on a Joint Stipulation of Facts submitted by the parties, the common pleas court reversed the determination of the treasurer. Relying on *Pugliese v. Township of Upper St. Clair*, 660 A.2d 155 (Pa.Cmwlth.1995), the court held that the amounts attributable to Appellee's exercise of the 1984 and 1985 non-qualified stock options constituted investment income rather than earned income, and were thus not subject to the earned income tax. Appellants, the Township of Mt. Lebanon and the township treasurer, appealed to the Commonwealth Court, which affirmed. *Marchlen v. Township of Mt. Lebanon*, 707 A.2d 631 (Pa.Cmwlth.1998).

■ Our scope of review in a tax assessment appeal is limited to a determination of whether the trial court abused its discretion, committed an error of law, or rendered a decision unsupported by the evidence. *Westinghouse Electric Corp. v. Board of Property Assessment, Appeals and Review of Allegheny County*, 539 Pa. 453, 652 A.2d 1306 (1995). With this standard in mind, we turn to the parties' claims.

Appellants argue that the LTEA and Mt. Lebanon's implementing ordinance define earned income broadly, to include all forms of compensation received by an individual in exchange for services rendered. Appellants assert that the stock options granted to Appellee by ALCOA were compensation in exchange for services rendered, and are therefore taxable as earned income.

Section 13 of the LTEA authorizes political subdivisions of the Commonwealth to impose a tax on the earned income of residents. The LTEA defines earned income as follows:

"Earned Income." Salaries, wages, commissions, bonuses, incentive payments, fees, tips, and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property. . . .

53 P.S. § 6913.

Mt. Lebanon's definition of earned income is nearly identical to the LTEA definition:

"Earned Income." Salaries, wages, commissions, bonuses, incentive payments, fees, tips, and other compensation received by a person or his personal representative for services rendered, whether directly or through an agent, and whether in cash or in property. "Earned income" is to be distinguished from "passive income" or "investment income" which is received by claim other than performance of services.

Mt. Lebanon Tax Reg. art I, § 101(f).

In its simplest terms, the issue presented in this case is whether the above quoted language from the LTEA and Mt. Lebanon's implementing ordinance can fairly be read to apply to stock options like those received by Appellee. ALCOA's Employees' Stock Option Plan, Article II, Sections 1 and 2, reads as follows:

SECTION 1. *Purpose.* The function of the Plan is to grant to Eligible Employees options to purchase Company Stock and where the [Employee Stock Option] Committee so determines, an optional method of settlement thereof in the form of stock appreciation rights, so that such employees thereby not only share in the future success of the business of the Company and its Subsidiaries but have an increased incentive to promote the well-being of those companies and a better appreciation of the shareholder point of view on matters of corporate management.

SECTION 2. *Eligibility.* Key employees of the Company and its subsidiaries who, in the sole opinion of the Committee are from time to time mainly responsible for the management, growth and protection of some part or all of the business of the Company and such Subsidiaries (including officers and employees who are members of the Board), shall be eligible to be granted options to purchase Company Stock and related stock appreciation rights under the Plan. From such Eligible Employees, the Committee shall choose from time to time any Eligible Employee to whom stock options shall be granted, the type of stock options, the number of shares of Company Stock to be included in each such option, and the stock appreciation rights if any related

to each such option. No Eligible Employee shall have any right whatsoever to receive options or stock appreciation rights unless selected therefor by the Committee.

Reproduced Record ˚at 141a. Thus, the stated purpose of ALCOA's Stock Option Plan is to allow certain key employees, who have been responsible for previous business success, to share in the future successes of the employer and to provide these key employees with an increased incentive to promote the employer's well-being, through the discretionary grant of stock options.

■ By the terms of ALCOA's Stock Option Plan, Appellee's stock options must be deemed as having been granted to Appellee both as a reward for past performance [7] and as an incentive for future performance. By the terms of the LTEA itself and Mt. Lebanon's own definition of earned income, we must therefore agree with Appellants that the stock options in this case constitute a form of "incentive payments" or "other compensation received by a person ... for services rendered ... whether in cash or in property...." Accordingly, the stock options are taxable as earned income under the LTEA.

Indeed, such a conclusion is consistent with well-established taxation practice. Both the Commonwealth of Pennsylvania and the United States government classify stock options as compensation.[8] See 61 Pa.Code § 101.6(a); 72 Pa.C.S. § 7303(a); I.R.C. § 83. In Commissioner v. LoBue, 351 U.S. 243, 76 S.Ct. 800, 100 L.Ed. 1142 (1956), the United States Supreme Court explained the rationale for treating stock options as compensation:

> When assets are transferred by an employer to an employee to secure better services they are plainly compensation. It makes no difference that the compensation is paid in stock

**7.** The fact that stock options are only granted to key employees who have been responsible for previous business success supports the conclusion that the options have been granted to Appellee "for services rendered" by Appellee to ALCOA.

**8.** While Appellee is certainly correct that the taxation schemes of the Commonwealth and the federal government are not dispositive for purposes of the LTEA, we find the underlying rationale highly persuasive and directly relevant to the question before us.

rather than in money.... The transaction here was unlike a mere purchase. It was not an arm's length transaction between strangers. Instead it was an arrangement by which an employer transferred valuable property to his employees in recognition of their services. We hold that LoBue realized taxable gain when he purchased the stock.

351 U.S. at 247–248, 76 S.Ct. 800 (footnote omitted).

In finding to the contrary, the Commonwealth Court concluded that "the options themselves do not represent earned income subject to Mt. Lebanon's earned income tax because the options themselves have no ascertainable value...." 707 A.2d at 635. However, ascertaining the value of stock options is a process separate and distinct from determining whether stock options constitute "compensation," taxable as earned income.

At the time that the stock options in this case were granted to Appellee, they could not be exercised. This does not imply that stock options have no value at the time they are granted. Stock options are valuable inducements to attract and retain employees and to compensate them for their services. The holder of a stock option can reap the benefits of stock price increases without bearing the risks of stock price declines. However, at the time that the stock option is granted, its "value" is purely speculative, for should the fair market value of the stock drop below the purchase price of the option, the exercise of the option on or after its maturity date would result in a loss to the holder of the option—i.e. the option would be worthless. In contrast, should the fair market value of the stock rise above the purchase price of the option, the exercise of the option on or after its maturity date would result in a gain to the holder of the option. Further, the holder of the stock option may well choose not to exercise the option. Thus, it is not that stock options have no value at the time they are granted, rather, the value of the stock option is speculative and not readily ascertainable until exercised.[9] It

9. It is of paramount importance in the discussion of stock options to keep in mind that stock options take many forms and have assorted conditions. For example, some stock options grant the holder the right

is precisely for this reason that the taxing authority must wait until the exercise of the stock option to compute the associated tax liability.[10]

The Commonwealth Court was also incorrect when it asserted that Appellee will not actually realize any benefit from his stock options until he resells the ALCOA stock he purchased with the 1984 and 1985 options. When Appellee exercised the 1984 and 1985 options and purchased ALCOA stock at below market value, he was free to immediately resell the ALCOA stock and realize the associated spreads. Instead, Appellee chose to retain the ALCOA stock, thereby speculating in the stock market. The initial value received by Appellee from exercising his stock options, which is taxable as compensation, is clearly distinguishable from any later increase in value generated by virtue of Appellee's investment decision to continue to hold the ALCOA stock, which would be taxable as passive investment income. Thus, the Commonwealth Court erred in relying on *Pugliese* for the proposition that Appellee's exercise of the stock options constituted investment income rather than earned income.

The order of the Commonwealth Court, affirming the order of the common pleas court, is reversed.

to purchase the stock immediately, and not at some future maturity date such as the stock options in the instant case. The impact of these assorted conditions on the analysis of the taxability of the stock options will vary accordingly.

10. That the options have no readily ascertainable value until they are exercised is relevant to the question of *when* the stock options should be recognized as compensation, and therefore taxed, but it is irrelevant to the question of *whether* stock options constitute compensation subject to taxation.