CITY OF PHILADELPHIA, Appellant

v.

TAX REVIEW BOARD OF THE CITY OF PHILADELPHIA to the use of Daniel Aboyan, Charles Connoly, Michael P. Heavener, Robert N. Gilmore, Charles Coltman, James Calla, Terrance A. Larsen, Christopher Carey, Dorothy L. Jaworski, Rosemarie Greco, Paul D. Geraghty, Donald E. Frankenfeld, David C. Carney, Diego (Dan) A. Chila, CPA, Charles H. Dietrich, Vincent T. Dipatre, Susan Fedele, Kenneth J. Flade, Thomas J. Kaplin, Ann Weber–Ammar, Kent L. Babcock, III, Ronald L. Bacon, James H. Brooks, Lawrence B. Kramer, John Principe, Joel H. Schwartz, Joseph M. Vayda, Donn G. Scott, Ernest B. Smith, Mark E. Stalnecker, Carol Williams, Jorge Leon, Edward C. O'Donnell, Michael A. Varzally, David Swoyer, Frank P. Sweeney, Thomas B. O'Rourke, Robert B. Palmer, James Pope, Maureen E. Pugh, Carol A. Leisenring, John P. Neary, Dorothy T. Motz, Thomas McDonnell and Robert F. McCammon.

Commonwealth Court of Pennsylvania.

Argued Feb. 27, 2006.
Decided June 29, 2006.

———

Jack M. Panitch, Philadelphia, for appellant.

Peter J. Picotte, II, Philadelphia, for appellees.

BEFORE: McGINLEY, Judge, and SMITH–RIBNER, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The City of Philadelphia (City) appeals from an order of the Court of Common Pleas of Philadelphia County that affirmed the order of the City's Tax Review Board (Board) directing that the City apply the Black–Scholes Option–Pricing Formula (Black–Scholes formula) to the stock option income for each of the forty-five individual Appellees (Taxpayers) on their refund claims.[1] The City questions whether an amendment to a refund claim setting forth new facts not included in or relevant to the original claim was timely when it was asserted for the first time after expiration of the three-year period provided in the refund ordinance.

## I

According to stipulations filed with the Board, the Taxpayers were employed by the former CoreStates Bank, N.A. (CoreStates), in Philadelphia during the tax years 1995, 1996 and 1997. Under an incentive compensation plan, CoreStates granted stock options to Taxpayers, which consisted of a right to purchase a specified number of shares of stock at a specified price not less than the market price on the date of the grant. The options are not publicly traded. The "spread" is the excess of the publicly traded price of the stock at the time of exercise of the option over the price that the employee pays. Stipulation of Facts, No. 5, Reproduced Record (R.R.) 131a. The Department of Revenue (Department) treated the spread from the exercise of the options in the three years at issue as taxable income under then § 19–1501(8) of the Philadelphia Code (now § 19–1501(10)), which specifies "[a]ll salaries, wages, commissions, bonuses, incentive payments, fees and tips that may accrue or be received by an individual, whether indirectly [sic] or through an agent and whether in cash or in property, for services rendered" with enumerated

---

1. Stipulation of Facts, No. 14 provides as follows:

 The Black–Scholes Option–Pricing Formula is an option-pricing model accepted as a method for valuing a stock option granted by a public entity for financial accounting standards purposes by the Financial Accounting Standards Board in its Statement of Financial Accounting Standards No. 123, "Accounting for Stock–Based Compensation" (FASB 123). To ascertain the grant-date value of an option not traded over an exchange, the following information is used to derive the value under the Black–Scholes Options–Pricing Formula:

 Current (date of grant) market price adjusted for dividends;

 Times to maturity in years;
 Exercise price;
 Rick-free interest rate on date of grant;
 Standard deviation or volatility factor.
 The information set forth above is incorporated into a mathematical formula for which two American economists, Robert C. Merton and Myron S. Scholes, won the Nobel Prize in economics. A mathematical representation of this formula is:
 $$C = SN(d_1) - Le^{-rt}N(d_1 - \sigma\sqrt{T})$$
 (Adjustments are made to the formula if the stock pays annual dividends.)
 Reproduced Record (R.R.) 135a–136a.

exclusions. CoreStates withheld and paid wage tax for the spread on the options the Taxpayers exercised.

In February 1998 this Court issued its decision in *Marchlen v. Township of Mt. Lebanon,* 707 A.2d 631 (Pa.Cmwlth.1998), *rev'd,* 560 Pa. 453, 746 A.2d 566 (2000), in which the Court concluded that under a very similar specification of taxable "earned income" in Section 13 of the Local Tax Enabling Act (LTEA), Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. § 6913, earnings from such stock options were passive investment income and not "earned income" subject to the local wage tax. In March 1998 the Court issued a similar decision in *Newbrey v. Township and School District of Upper St. Clair,* 710 A.2d 96 (Pa.Cmwlth.1998), *rev'd,* 561 Pa. 345, 750 A.2d 304 (2000). In August 1998 First Union National Bank (First Union), as the successor to CoreStates, filed consolidated petitions with the Department seeking refund of wage taxes withheld for exercise of the options, asserting that the exercise was not a taxable transaction. In October 1998 the Department denied the petitions, stating that *Marchlen* and *Newbrey* did not control as they were decided under the LTEA, whereas the City's taxing authority derives from the Act known as the Sterling Act, Act of August 5, 1932, Extra Sess., P.L. 45, *as amended,* 53 P.S. §§ 15971–15973.

First Union timely petitioned the Board to appeal the Department's denials in January 1999. Before hearing the parties agreed to hold the petitions in abeyance pending the Pennsylvania Supreme Court's review of *Marchlen* and *Newbrey.* On February 22, 2000, the Supreme Court reversed in *Marchlen v. Township of Mt. Lebanon,* 560 Pa. 453, 746 A.2d 566 (2000), holding that stock options that were granted as an award for past service and as an incentive for future service fell within the meaning of "incentive payments" or "other compensation ... for services rendered" under Section 13 of the LTEA and so were taxable.

First Union thereafter withdrew from the appeal before the Board, but the Board permitted the named Taxpayers to file substitute petitions of their own. Each asserted that other petitioners had appealed the City's imposition of wage tax at the time of exercise of this type of stock option claiming that the value of the options at the date of receipt was taxable, which value could be ascertained using the Black–Scholes formula, and that the City had entered into settlement stipulations with the other taxpayers recomputing the wage tax on the value of the options at the date of receipt.[2]

Section 19–1703(1)(d) of the Philadelphia Code provides: "Every petition for refund of moneys collected by the Department ... shall be filed with the Department within 3 years from the date of payment to the City ... or the due date, whichever is later." Section 19–1703(2) provides: "Every petition for refund shall state the reasons upon which the petitioner relies and shall include a certification by the petitioner that the facts set forth therein are true." The original petitions filed by First Union in August 1998 were within that period for all three tax years, but the individual petitions filed in May 2001 were outside the period, even for the last year. The Department contended that the Taxpayers did not file, amend or substitute

---

**2.** On September 14, 2000, a new City ordinance excluded from the wage tax any exercise of a stock option and excluded the value at the time of grant unless the option was given in place of offered cash or had a "readi-ly ascertainable fair market value" as defined by Federal regulation, which would not apply to these options. Philadelphia Code § 19–1501(10)(f).

refund claims asserting the applicability of the Black–Scholes formula within the applicable period. The Taxpayers asserted that the refund claims were timely filed and that they might raise by amendment the applicability of the Black–Scholes formula to support their position.

 The Board ordered the City to apply the Black–Scholes formula, agreeing that it would be unfair to require the Taxpayers to have included this theory in their initial claims. It reasoned that the City could not claim surprise; that the Rules of Civil Procedure do not apply before the Board; that provisions such as Sections 504 and 505 of the Local Agency Law, 2 Pa.C.S. §§ 504 and 505, set forth more relaxed evidentiary rules for administrative agencies; that no pleading standards or rules prohibited amendment before the Board in a proceeding on a denial; and that no basis exists in the Philadelphia Code or in case law for holding the Taxpayers to a stricter standard of pleading on a refund claim. The trial court stated that the purpose of a three-year statutory period for refund claims is to provide notice to the municipality or agency to avoid prejudice due to late assertion of a claim, and it quoted *Borough of Malvern v. K.R.I. Corp.*, 131 Pa.Cmwlth. 432, 570 A.2d 633 (1990), for the principle that such a period is not to be applied as rigorously as a statute of limitations. The trial court concluded that the Black–Scholes formula was not relevant until after the reversal in *Marchlen* and that the facts remained the same regardless of the theory of recovery.[3]

## II

 The City first refers to the requirements of Philadelphia Code § 19–

1703(1)(d) of filing a petition for refund within three years of the date due or date of payment and § 19–1703(2) of stating the reasons relied upon and certifying that the facts alleged are true. It contends that these are related in order to prevent taxpayers from skirting the three-year limit by filing naked petitions and then revealing the facts much later during litigation. The only claim that the Taxpayers filed timely was that under this Court's decisions in *Marchlen* and *Newbrey* the income from the exercise of the stock options was unearned and therefore not subject to earned income tax, which was invalidated by the Supreme Court's decision in *Marchlen*. The City contends that after the three-year period the Taxpayers first asserted that the stock options resulted in earned income but that it should be taxed at the much lower Black–Scholes formula grant date valuation, with relevant facts certified at the time of amendment. The City argues that refund of taxes voluntarily paid is a matter of legislative grace and that strict compliance with any statutory requirements is necessary. *Bethlehem Steel Co. v. Board of Finance and Revenue*, 431 Pa. 1, 244 A.2d 767 (1968); *Davis v. Commonwealth*, 719 A.2d 1121 (Pa.Cmwlth.1998). Deadlines in statutes authorizing refunds are "absolute conditions to the right to obtain relief and are necessary to avoid great uncertainty in the budgetary planning and fiscal affairs" of the taxing authority. *Cooper v. Commonwealth*, 700 A.2d 553, 554 (Pa. Cmwlth.1997).

The City proffers that to establish fair market value of the options at the date of

---

**3.** The Court's review in a tax appeal case where the trial court takes no additional evidence is limited to determining whether constitutional rights were violated, whether an error of law was committed and whether the

tax review board's findings of fact are supported by substantial evidence. *Kennedy Boulevard Assocs. I, L.P. v. Tax Review Board of City of Philadelphia*, 751 A.2d 719 (Pa. Cmwlth.2000).

grant the Taxpayers were required to supply information necessary to establish value through the Black–Scholes formula. These reasons were not stated within the three-year period of § 19–1701(1)(d). In addition, the City disputes the applicability of *Borough of Malvern,* on which the trial court relied, and it notes that the case involved refund of a permit fee, not a tax, and that the decision draws support from opinions addressing concepts from tort law.[4] Next the City disputes the trial court's assertion that the facts remain the same regardless of the theory of recovery and that the facts have been stipulated. Unlike the original claim, the claim based upon the Black–Scholes formula requires establishment of such valuation. The parties stipulated as to the mathematical formula but not to inputs or to ultimate valuations.

The City rejects the notion that the Black–Scholes formula was not relevant when the original claims were filed and that it is unfair to expect the Taxpayers to have predicted the reversal in *Marchlen.* The Supreme Court's decision in *Marchlen* did not amount to an endorsement of Black–Scholes formula valuations; in fact, the court stated that the value of the stock options at issue there was purely speculative when they were issued because they could not be exercised for at least one year and the price at maturity could be below the option price. To the City's knowledge, the Black–Scholes formula valuations are only used in Philadelphia for settlement purposes for a brief window for claims relating to options not covered by the post-*Marchlen* amendments to the wage tax

ordinance. The Black–Scholes theory was as known and knowable before *Marchlen* as after. Moreover, the decision in April 2001 to offer Black–Scholes–based settlements to claimants not time barred would not have aided the Taxpayers, whose three-year period for the disputes for the 1997 tax year ended February 28, 2001. Finally, when the City decided to adopt the Black–Scholes method as an approach to settling litigated cases, it extended this to all taxpayers who could assert it timely.

The Taxpayers in response first stress that the refund petitions filed in August 1998 were well within the three-year period and met the requirements to state the reasons for the petitions and to give required certifications. They dispute the contention that a party to an administrative proceeding should be expected to predict an appellate court decision, and in support they cite *City of Wilkes–Barre Industrial Development Authority v. Board of Tax Assessment Appeals of County of Luzerne,* 100 Pa.Cmwlth. 486, 514 A.2d 1012 (1986), which held that a statutory change in the manner of determining the common level ratio for assessment purposes was sufficient justification for an owner's failure to raise the issue before the review board and on the first appeal to the Court because ratios for automatically appealed later years were not known then.

■ Next the Taxpayers emphasize that the Board required First Union to delay its withdrawal until the named Taxpayers had an opportunity to file their substituted individual claims. They interpret this de-

---

4. As the Taxpayers note, the statute at issue in *Borough of Malvern* was Section 1(a) of the Act of May 21, 1943, P.L. 349, *as amended,* 72 P.S. § 5566b(a), which applies when any person or corporation has paid into the treasury of any political subdivision "any taxes of any sort, license fees, penalties, fines or any other moneys to which the political subdivision is not legally entitled" and provides that refunds shall not be made "unless a written claim therefor is filed, with the political subdivision involved, within three years of payment thereof."

cision as being designed to protect individuals who chose to proceed on an alternate theory by preserving the original filing date, and they note that the substituted petitions pursue the same "claim" on an alternate legal theory. As well, nothing in the City Code or in administrative law generally requires a taxpayer to predict reversal of controlling authority or face procedural dismissal, and the Board and the trial court correctly determined that neither the refund petition filed with the Department nor the appeal filed with the Board is governed by the "fact pleading" standards of the Rules of Civil Procedure. *See Rutkowski v. Department of Transportation, Bureau of Driver Licensing,* 780 A.2d 860, 862 n2 (Pa.Cmwlth.2001) (stating that "the Rules of Civil Procedure do not apply to statutory appeals").[5]

First Union did not raise Black–Scholes initially because it was not relevant then. The Taxpayers rely upon *Commonwealth v. Manbeck, Inc.,* 36 Pa. D. & C.2d 742 (1965), where the court rejected an assertion that a taxpayer could not raise on appeal a favorable case that was not yet decided by the Supreme Court at the time of the initial proceeding, stating that requiring such clairvoyance far exceeds the concept of due diligence. They posit that suspension of the administrative process to wait for the appellate decision on an identical transaction should also suspend any time restrictions that might otherwise prevent them from introducing additional facts or legal theories, and they contend that all factors required for the Black–Scholes calculation are readily available from CoreStates' annual Securities and Exchange Commission filings and from historic interest rate data. They do not

depend on facts that may be affected by fading memories or lost documents. Also a decision to bar the requested refunds would discourage future taxpayers from holding claims in abeyance while a test case is litigated.

Countering the City's position on *Marchlen* and Black–Scholes, the Taxpayers suggest that the Supreme Court's decision pointed the way to use of Black–Scholes as a solution, although the matter was not argued or introduced. The Supreme Court stated: "[A]scertaining the value of stock options is a process separate and distinct from determining whether stock options constitute 'compensation,' taxable as earned income." *Marchlen,* 560 Pa. at 460, 746 A.2d at 570. Although the court stated that the value at the time of grant was purely speculative and that options had no readily ascertainable value until they were exercised, in this case the City has stipulated that the Black–Scholes option pricing formula is an accepted method for valuing a stock option granted by a public entity for financial accounting standards purposes. *See* Stipulation of Facts, No. 14, n1 above. The City has endorsed this method by applying it to calculate refunds in the cases noted in the Taxpayers' petitions.

Echoing the trial court's analysis, the Taxpayers submit that § 19–1703(1)(d) is the local counterpart to 72 P.S. § 5566b(a), which was held in *Borough of Malvern* to be a statute of "notification" rather than of limitations. Here, as in *Borough of Malvern,* the City was well aware of the claim for refunds, and it would not be prejudiced in that it has granted the same refunds to others. Even under the Rules of Civil

---

**5.** As the Taxpayers note, under the fact-pleading approach of the Rules of Civil Procedure it is unnecessary for a plaintiff to plead any particular legal theory. *Schreiber v. Republic Intermodal Corp.,* 473 Pa. 614, 375 A.2d 1285

(1977) (stating that the Rules reflect the principle that plaintiffs should not be forced to elect a particular theory and that meritorious claims should not fail because the wrong theory was chosen).

Procedure a proposed amendment that simply amplifies what has been averred is permitted. In *Frey v. Pennsylvania Elec. Co.,* 414 Pa.Super. 535, 607 A.2d 796 (1992), the Superior Court stated that the test is whether a defendant is required to answer a wholly different legal liability or legal obligation from that originally stated. The Taxpayers here continue to seek a refund of wage tax imposed on the exercise of stock options, which is the same "legal liability." The cases relied upon by the City to support its "strict compliance requirement" all concern taxpayers who failed to file their original claims within the statute of limitations. *See Bethlehem Steel Co.*; *Davis*; Cooper.

In a reply brief the City disputes the assertion that the Supreme Court in *Marchlen* legitimized the use of Black–Scholes valuations to establish fair market value for these options. The City offers that the wage tax ordinance was amended to remove the exercise of these stock options because of concern about driving away hi-tech companies and that it stipulated only that it permitted the use of Black–Scholes valuations for purposes of settlement of petitions filed with the Board involving grants and exercises of options before September 14, 2000. The City notes that the case in *City of Wilkes–Barre* involved an automatic appeal of future assessments while an original one was pending, and it states that as to uniformity it has developed and uniformly applied a policy of permitting Black–Scholes valuations for claimants who raise this claim within the three-year period.

### III

■ The Court concludes that the Board correctly applied the ordinance provisions and that the trial court properly affirmed. First, there is no question that a claim for refund of wage taxes withheld relating to the Taxpayers' exercise of the options in 1995, 1996 and 1997 was timely filed in August 1998. Unlike cases relied upon by the City for the principle of a requirement of strict compliance with a statutory limitation on refund claims, such as *Bethlehem Steel Co., Davis* and *Cooper,* this case does not involve failure to file an initial claim timely. This case rests solely on the City's contention that the § 19–1703(2) requirement that the petition "shall state the reasons upon which the petitioner relies and shall include a certification by the petitioner that the facts set forth therein are true" means that no reasoning or fact not set forth within the three-year period may be considered, even if a claim is timely filed and a significant change in the law occurs.

Despite the City's efforts to undermine the holding in *Borough of Malvern,* the statute at issue there expressly applies to payments of "any taxes of any sort" as well as other items to which the political subdivision is not entitled; therefore, it is of no moment that the petitioner in *Borough of Malvern* sought a refund of a permit fee. The Taxpayers are correct that the statute at issue there is undeniably similar to § 19–1703(1)(d), *see* n4 above, and the holding that it is a notification statute not to be enforced as strictly as a limitations statute at a minimum creates tension with the City's "strict compliance" cases.

The Court agrees with the reasoning of the Board that the City was long aware that the Taxpayers sought refunds of wage taxes paid on stock option exercise amounts, and the City cannot credibly assert prejudice in view of the City's negotiating with other taxpayers and agreeing to apply the Black–Scholes formula in regard to similar claims. Furthermore, the Board was correct that the original petitions filed by First Union fully complied by meeting

the time requirements and stating the reasoning relied upon and certifying the facts alleged. The Board found no provision in the Philadelphia Code, the Local Agency Law or the Board's standard practice that precluded the Taxpayers from amending their petitions to address a change in the law affecting their position. As the trial court noted, the City's position would hold the Taxpayers to a stricter standard than the Rules of Civil Procedure would require in a civil proceeding. *See* Pa. R.C.P. No. 1033 (allowing liberal amendment) *and Frey.*

The Board stressed that its administrative procedures are intended to be less formal than under the Rules to facilitate pursuit by individual taxpayers of often quite small claims. The fact that petitioners are required to state the reasons upon which they rely does not mandate or imply that the Board may not consider any other reasons of which it is aware. *Compare Jefferson Memorial Park v. West Jefferson Hills School District,* 397 Pa. 629, 156 A.2d 861 (1959) (holding that if any positive statute supports a claim on the facts pleaded, a court may not dismiss, even if the plaintiff has pleaded the wrong statute). It would be unreasonable to require the Taxpayers here to predict reversal of the authority on which they relied and to plead all other possible alternatives. Thus the Court concludes that the Board did not err in its resolution and accordingly affirms the trial court's order.

### ORDER

AND NOW, this 29th day of June, 2006, the order of the Court of Common Pleas of Philadelphia County affirming the order of the Tax Review Board of the City of Philadelphia is affirmed.