J-A26030-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| PAUL J. BENEC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| ARMSTRONG CEMENT & SUPPLY CORP., DENNIS C. SNYDER AND DAVID SNYDER | |
| | No. 139 WDA 2016 |

Appeal from the Order Entered January 6, 2016
in the Court of Common Pleas of Butler County
Civil Division at No(s): 2014-10943

BEFORE:  BENDER, P.J.E., RANSOM, J., and MUSMANNO, J.

MEMORANDUM BY RANSOM, J.:          **FILED NOVEMBER 22, 2016**

Appellant, Paul Benec, appeals from the order entered January 6, 2016, which granted the preliminary objections in the nature of a demurrer filed by Armstrong Cement & Supply Corp., Dennis C. Snyder, and David Snyder.  We affirm.

The relevant facts and procedural history are as follows.  Appellant is the former executive vice president of marketing at Armstrong Cement & Supply Corp. ("Armstrong").  Second Am. Compl. ¶¶ 16, 37. [1]

In 1983, Russ Haller, then president of Armstrong, approached Appellant with an offer of employment.  Second Am. Compl. ¶¶ 14-15.  The

_____

[1] For purposes of this appeal and in light of the procedural posture of the case, we accept as true the pleadings set forth in Appellant's Second Amended Complaint, 9/9/15, at 1-19.

oral offer included a stock bonus. Second Am. Compl. ¶ 15. The subsequent written offer of employment, however, included the term "stock option." Second Am. Compl. ¶ 16. The relevant provision of the contract read:

> 5. Stock Options – will be offered in a non-voting class B stock that will be warranted at each anniversary date of this contract. The stock awarded will be equivalent to five percent of the total outstanding shares of the present class A voting stock and will be awarded on the basis of one-third of the five percent at the end of the first year, one-third of the five percent at the end of the second year, and one-third of the five percent at the end of the third year.

Second Am. Compl. ¶ 19; Ex. 2.

Mr. Haller informed Appellant, verbally, that the terms "stock options" and "stock bonuses" were intended synonymously. Second Am. Compl. ¶ 17. Prior to signing the contract, Appellant again inquired as to the meaning of the term "stock option," and Mr. Haller assured him that the agreement provided a "stock bonus" rather than a stock option. Second Am. Compl. ¶ 21. Appellant signed an employment contract on January 4, 1984. Second Am. Compl. ¶ 18, Ex. 2. Appellant avers that pursuant to the agreement, he is thus entitled to 2,213.23 shares of stock in Armstrong. Second Am. Compl. ¶ 23.

Appellant attached to his complaint a copy of the original offer letter, the employment contract, and a copy of the offer letter signed in 1987 by the then-president of Armstrong, Wayne Sell. Second Am. Compl. ¶¶ 24-25, Ex. 1-3. The offer letter lists the total shares of Armstrong stock

outstanding. Second Am. Compl. ¶¶ 24-25, Ex. 3. Appellant avers that, over the thirty years of his employment, various Armstrong entities have failed to pay him dividends or distribution of income. Second Am. Compl. ¶¶ 35-38.

Appellant filed a complaint in civil action on November 3, 2014. Appellees filed preliminary objections by demurrer to the complaint. Appellant filed a brief in opposition, and Appellees filed a reply in support of their objections. On April 2, 2015, by memorandum opinion, the court sustained Appellees' objections and dismissed the complaint without prejudice.

On April 21, 2015, Appellant filed an amended complaint. Appellees filed preliminary objections by demurrer, Appellant filed an answer in opposition, and Appellees filed a reply brief in support of their objections. On August 18, 2015, the court granted Appellees' preliminary objections and by memorandum opinion, dismissed the complaint without prejudice.

On September 9, 2015, Appellant filed his second amended complaint, raising the following counts: contract reformation due to mutual mistake of fact; reformation of contract by estoppel; minority shareholder oppression common law cause of action; minority shareholder oppression pursuant to 18 P.S. § 1767; breach of fiduciary duty; breach of contract; detrimental reliance; unjust enrichment; declaratory judgment pursuant to 42 Pa.C.S. § 7531; and shareholder derivative action.

Appellees filed preliminary objections by demurrer. Appellant filed an answer in opposition, and Appellees filed a reply brief in further support of their objections. On January 6, 2016, the court issued a memorandum opinion granting Appellees' preliminary objections and dismissed Appellant's second amended complaint with prejudice.

Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a 1925(a) statement incorporating its prior memorandum opinions.

Herein, Appellant raises the following issues for our review:

1. Did the trial court err in sustaining preliminary objections on the contract reformation claims based upon a mutual mistake made by the parties regarding the meaning of the term "stock option"?

2. Did the trial court err in sustaining preliminary objections on the contract reformation claims based upon a unilateral mistake made by Appellant regarding the meaning of the term "stock option"?

3. Did the trial court err in sustaining preliminary objections on the breach of contract and declaratory judgment claims, since the term "stock option" was latently and patently ambiguous?

4. Did the trial court err in sustaining preliminary objections on the detrimental reliance and unjust enrichment claims, since these claims were adequately plead?

5. Did the trial court err in sustaining preliminary objections to Counts I, II and III, since Appellant had standing as a shareholder?[2]

Appellant's Brief at 2 (unnecessary capitalization omitted).

Our standard of review is settled.

[We must] determine whether the trial court committed an error of law. When considering the appropriateness of a ruling on preliminary objections, the appellate court must apply the same standard as the trial court.

Preliminary objections in the nature of a demurrer test the legal sufficiency of the complaint. When considering preliminary objections, all material facts set forth in the challenged pleadings are admitted as true, as well as all inferences reasonably deducible therefrom. Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief. If any doubt exists as to whether a demurrer should be sustained, it should be resolved in favor of overruling the preliminary objections.

*Majorsky v. Douglas*, 58 A.3d 1250, 1268-69 (Pa. Super. 2013) (quoting

*Feingold v. Hendrzak*, 15 A.3d 937, 941 (Pa. Super. 2011)).

The instant appeal is essentially a contracts dispute. Contract interpretation is a question of law and our standard of review is *de novo*.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007). When interpreting a contract:

---

[2] Appellant's original complaint raised, as its first three counts, common law and statutory claims for minority shareholder oppression, and breach of fiduciary duty. Compl. at ¶¶ 33-46. In Appellant's second amended complaint, these claims appear as Counts III, IV, and V. Second Am. Compl. at ¶¶ 52-68.

> [t]he fundamental rule . . . is to ascertain and give effect to the intent of the contracting parties. The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself. The whole instrument must be taken together in arriving at contractual intent. Courts do not assume that a contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed. When a writing is clear and unequivocal, its meaning must be determined by its contents alone.

*Murphy v. Duquesne University Of The Holy Ghost*, 777 A.2d 418, 429 (Pa. 2001) (internal citations and quotation marks omitted). "In ascertaining the intent of the parties to a contract, it is their outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions, that matter." *Espenshade v. Espenshade*, 729 A.2d 1239, 1243 (Pa. Super. 1999).

Several of Appellant's arguments rely on the admission of parol evidence, namely conversations between Appellant and various Armstrong board members regarding the term "stock options." These conversations are intrinsic to many of Appellant's claims. To the extent that we may address these issues together, this Court will do so.

Parol evidence is prior or contemporaneous oral representations or agreements concerning a subject that is specifically covered by the written contract, which purports to cover the entire agreement of the parties. *See Bowman v. Meadow Ridge, Inc.*, 615 A.2d 755, 758 (Pa. Super. 1992). In the absence of fraud, accident, or mistake, or where the contract is ambiguous, parole evidence is inadmissible. *Yocca v. Pittsburgh Steelers*

***Sports, Inc.***, 854 A.2d 425, 436 (Pa. 2004). In the instant matter, the contract, by its terms, is the final agreement between the parties. Second Am. Compl. at Ex. 2. Thus, unless one of the exceptions apply, the conversations between Appellant and Mr. Haller constitute inadmissible parol evidence.

A patent ambiguity appears on the face of the instrument and arises from the defective, obscure, or insensible language used. ***Z & L Lumber Co. of Atlasburg v. Nordquist***, 502 A.2d 697, 699 (Pa. Super. 1985) (citation omitted). A latent ambiguity arises from extraneous or collateral facts rendering the meaning of a written contract uncertain. ***Id.*** Such facts must constitute objective indicia that the terms of the contract are susceptible to different meanings. ***Id.*** at 699; ***see also Krizovensky v. Krizovensky***, 624 A.2d 638, 643 (Pa. Super. 1993). In either type of ambiguity, the inquiry focuses on what the agreement manifestly expressed, not what the parties may have silently intended. ***Delaware County v. Delaware County Prison Employees Independent Union***, 713 A.2d 1135, 1138 (Pa. 1998).

Appellant argues that the term "stock options" is patently ambiguous. Appellant's Brief, at 29-42. According to Appellant, the term "awarded" suggests a gift and therefore renders the contract patently ambiguous. This argument is unavailing. Both this Court and Black's Law Dictionary have defined the term "stock option" as "an option to buy or sell a specific

quantity of stock at a designated price for a specified period regardless of shifts in market value during the period." ***MacKinley v. Messerschmidt***, 814 A.2d 680, 682 (Pa. Super. 2002) (citing Black's Law Dictionary 1431 (7th ed. 1999)). Moreover, Pennsylvania courts have indeed used the term "awarded" when dealing with stock options offered by an employer. ***See Fisher v. Fisher***, 769 A.2d 1165, 1167 (Pa. 2001) (referring to the "periodic award of stock options"), ***Marchlen v. Twp. of Mt. Lebanon***, 746 A.2d 566, 567 (Pa. 2000) (referring to stock option awards). Both cases use the language "award" to refer to the option to purchase stocks at a set price. ***See Fisher***, 769 A.2d at 1167 (referring to stock options awarded and noting that husband routinely exercised the options when they vested); ***see also Marchlen***, 746 A,2d at 567 (referring to employees exercising options to purchase stocks and that after the award of the option, employees must remain with the company for one year). Thus, there was no patent ambiguity in the wording of the contract.

Appellant's argument that the contract is latently ambiguous is equally unavailing. According to Appellant, the lack of an option price and term creates an ambiguity in the terms of the contract. We disagree. The contract states solely that stock options "will be offered," which indicates an offer to purchase and not a gift. As noted by the trial court, this provision contemplates a *future* offer of stock options, *i.e*, at the end of the terms 1985, 1986, and 1987, rather than a *present* offer. Thus, the lack of a

specified option price and term does not create a latent ambiguity. As Appellant has not identified an objective indication of ambiguity, the trial court properly excluded extrinsic parol evidence. **See Krizovensky**, 624 A.2d at 643.

Appellant also asserts that the conversations should be admissible because of a mutual mistake between the parties. Appellant's Brief at 8-20. According to Appellant, both parties mistakenly believed that the wording of the contract provided for the award of a stock bonus. Because this constituted a mistake of fact, Appellant concludes that he is entitled to reform the contract. **Id.** at 8-17.

"Mutual mistake of fact may serve as a defense to the formation of a contract and occurs when the parties have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." **Voracek v. Crown Castle USA Inc.**, 907 A.2d 1105, 1107–08 (Pa. Super. 2006).[3] A mutual mistake occurs when the instrument fails to set forth the true agreement of the parties. **Id**. The language of the contract should be interpreted in the light of the subject matter, apparent purpose of the

---

[3] In **Voracek**, for example, the "mistake of fact" was a hiring manager mistakenly sending the wrong employment agreement to be signed by the new hire. **See Voracek**, 907 A.2d at 1108.

parties, and conditions existing when executed. *Voracek*, 907 A.2d at 1108.

While a mutual mistake of fact may serve as a defense to the formation of a contract, a mistake of law does not. *See Betta v. Smith*, 81 A.2d 538, 539 (Pa. 1951); *see also Voracek*, 907 A.2d at 1107. A mistake of law is "a mistake as to the legal consequences of an assumed state of facts." *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 493 A.2d 736, 737 (Pa. Super. 1985). A mistake of law does not allow for recovery. *Id.* at 737. Incorrect interpretations of legal documents are considered mistakes of law. *Id*.

In the instant case, Appellant's attempt to establish a mutual mistake of fact is without merit. Even accepting as true Appellant's allegation that Mr. Haller intended the phrase "stock options" to mean "stock bonuses," the issue remains the legal effect of the phrase rather than any concrete, mutual mistake of fact. Appellant did not plead, as in *Voracek*, that he reviewed and accepted a different form of the contract than the contract he eventually signed. He pleaded only that the parties intended the contract to have a different effect than it did.

Consequently, Appellant has not established the existence of any exception that would require the admission of parol evidence, and, thus, the conversations regarding the parties' intent will not be considered when

determining Appellant's contract claims. With this background in mind, we now turn to Appellant's assertions of trial court error.

First, Appellant claims that the trial court erred in sustaining preliminary objections to his contract reformation claim based upon a mutual mistake by the parties regarding the meaning of the term "stock options." Appellant argues that, because both parties intended to confer a stock bonus rather than a stock option, this constituted a mistake of fact that should allow for the reformation of a contract. Appellant's Brief at 8-20.

However, as discussed above, Appellant has not established a mutual mistake of fact but, at best, a mutual mistake of law that does not constitute a defense to the formation of a contract. **See Acme Markets, Inc.**, 493 A.2d at 737. Additionally, Appellant's cause of action cannot be cured by further amendment, as his acceptance of employment was based upon his erroneous interpretation of the contract. **Id.** at 738. Thus, we find no error in the trial court's dismissal of this cause of action. **See Majorsky**, 58 A.3d at 1269.

Second, Appellant claims that the trial court erred in sustaining preliminary objections to his contract reformation claim based upon a unilateral mistake. Appellant's Brief at 20-25. However, Appellant did not raise this issue in his Pa.R.A.P. 1925(b) statement and, consequently, has waived it for purposes of appeal. **See Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005) (quoting **Commonwealth v. Lord**, 719 A.2d 306,

309 (Pa. 1998) ("[a]ny issues not raised in a [Rule] 1925(b) statement will be deemed waived.")

Third, Appellant claims that the trial court erred in sustaining preliminary objections to his breach of contract and declaratory judgment claims, since the term "stock option" was both latently and patently ambiguous and parol evidence should have been admitted to determine the parties' intent. Appellant's Brief at 29-42.

The three elements needed to establish a breach of contract action are the existence of a contract, a breach of duty imposed by the contract, and damages. **Sullivan v. Chartwell Inv. Partners, LP**, 873 A.2d 710, 716 (Pa. Super. 2005) (quoting **J. F. Walker Co., Inc. v. Excalibur Oil Group, Inc.**, 792 A.2d 1269 (Pa. Super. 2002)). As we have noted above, Appellant has not established a latent or patent ambiguity requiring the admission of parol evidence to determine the parties' intent. Thus, we may look only to the terms of the employment contract itself, which provides that stock options *will be offered* at certain intervals during his employment. **See** Second Am. Compl. ¶ 19; Ex. 2.

Appellant pleaded the existence of a valid contract of employment providing for stock options. However, Appellant failed to plead that he was not offered stock options at the appropriate intervals pursuant to the employment contract, nor did he plead that he attempted or sought to exercise said options. Thus, Appellant is unable to establish a breach of

contract action. **See Sullivan**, 873 A.2d at 716; **see Majorsky**, 58 A.3d at 1269.

Similarly, Appellant's arguments regarding the trial court's dismissal of his declaratory judgment count fail. The Declaratory Judgments Act provides that:

> any person interested under a . . . contract, or other writings constituting a contract . . . may have determined any question of construction or validity arising under the instrument . . . and obtain a declaration of rights, status, or other legal relations thereunder.

42 Pa.C.S. § 7533. In order to establish a right to relief through a declaratory judgment, a plaintiff must establish a direct, substantial and present interest. **Bromwell v. Michigan Mut. Ins. Co.**, 716 A.2d 667, 670 (Pa. Super. 1998). Further, a plaintiff must demonstrate that an actual controversy exists. **Id.** In the instant case, Appellant has established standing, in that he has pleaded a valid contract of employment. Appellant has established an actual controversy, namely, the interpretation of the term "stock options." However, based upon our previous discussion, Appellant is not entitled to relief. Thus, we discern no legal error in the trial court's dismissal of the claim. **See Majorsky**, 58 A.3d at 1269.

Fourth, Appellant argues that the trial court erred in sustaining preliminary objections to his claims of detrimental reliance and unjust enrichment, as the claims were adequately pleaded. Appellant's Brief at 42-49.

"A cause of action under detrimental reliance or promissory estoppel arises when a party relies to his detriment on the intentional or negligent representations of another party, so that in order to prevent the relying party from being harmed, the inducing party is estopped from showing that the facts are not as the relying party understood them to be." *Rinehimer v. Luzerne Cty. Cmty. Coll.*, 539 A.2d 1298, 1306 (Pa. Super. 1988).

To establish a claim for promissory estoppel, a claimant must prove 1) a promise, 2) which the promisor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee, 3) which does induce such action or forbearance is binding, and 4) injustice can be avoided only by the enforcement of the promise. *See Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 119, 1174 (Pa. Super. 2003). The doctrine of promissory estoppel permits a claimant to enforce a promise in the absence of consideration. *Sullivan*, 873 A.2d at 717. However, the doctrine cannot be loosely applied, or any promise, regardless of the complete absence of consideration, would be enforceable. *Id.* Thus, where there is a valid contract, the question of a defendant's liability may be decided properly and finally on contractual principals of offer and acceptance, and promissory estoppel does not apply. *See*, *e.g.*, *Lobar v. Lycoming Masonry, Inc.*, 876 A.2d 997, 1000-01 (Pa. Super. 2005).

In the instant case, there is a valid contract. It is supported by consideration. *See Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1195

- 14 -

(Pa. 1987) (noting that in an employment contract consideration may be any bargained for exchange). Appellee agreed to provide Appellant with a number of benefits, specifically, a salary, company car, life insurance, bonus plan, stock options, an expense account, country club membership, and hospitalization and medical insurance. In return, Appellant agreed to provide Appellee services as an executive vice-president of marketing, which he did for thirty years. Thus, although Appellant disagrees with the interpretation of the terms of the contract, he cannot recover based on a claim for promissory estoppel. *See Sullivan*, 873 A.2d at 717.[4]

Similarly, his claim for unjust enrichment must fail. This Court has held that where a written or express contract exists, as it does in the instant matter, we may not make a finding of unjust enrichment. *See Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999).

Finally, Appellant claims that the trial court erred in concluding that Appellant lacked standing to pursue claims of minority shareholder oppression and breach of fiduciary duty. Appellant argues that he is not required to attach a physical stock certificate to his complaint and that, because he pleaded he is the owner of Armstrong stock, he has established

---

[4] Although the trial court used a different analysis, we may affirm if it is correct on any legal ground or theory, regardless of the reason adopted by the trial court. *Al Hamilton Contracting Co. v. Cowder*, 644 A.2d 188, 190 (Pa. Super. 1994).

a *prima facie* case of shareholder oppression and fiduciary duty. Appellant's Brief at 49.

A trial court's ruling regarding standing is subject to a *de novo* standard of review and our plenary scope of review entitles us to examine the entire contents of the record. *See Rock v. Rangos*, 61 A.3d 239, 250 (Pa. Super. 2013). A party seeking judicial resolution of a controversy "must establish as a threshold matter that he has standing to maintain the action." *Johnson v. American Standard*, 8 A.3d 318, 329 (Pa. 2010). A party who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved by the matter and therefore has no standing to obtain judicial resolution of his challenge. *Id.* To establish standing,

> [a]n individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation. A party has a substantial interest in the outcome of litigation if his interest surpasses that of all citizens in procuring obedience to the law. The interest is direct if there is a causal connection between the asserted violation and the harm complained of; it is immediate if that causal connection is not remote or speculative.

*Fumo v. City of Philadelphia*, 972 A.2d 487, 496 (Pa. 2009).

Appellant seeks to establish a cause of action for breach of fiduciary duty and minority shareholder oppression. Pennsylvania courts have long held that majority shareholders have a fiduciary duty to protect the interests of the minority. *Hill v. Ofalt*, 85 A.3d 540, 550 (Pa. Super. 2014). Where a majority shareholder acts oppressively towards a minority shareholder, the majority shareholder breaches that fiduciary duty. *Id.*; *see also Ford v.*

*Ford*, 875 A.2d 894, 906 (Pa. Super. 2005). The oppressed shareholder thus has standing to assert a direct breach of fiduciary duty claim or may pursue other remedies available under the Business Corporation Law. *See Ford*, 878 A.2d at 904; *see also* 15 Pa.C.S. § 1767(a)(2).

Appellant asserts, throughout his complaint, that he is *entitled* to stocks. This assertion is premised upon his interpretation of the contract. However, entitlement is not the same as ownership. Appellant's contract did not confer automatic ownership of the stock but, instead, the option to purchase stock. Appellant has not pleaded, and indeed cannot plead, that he owns any stocks. Thus, the trial court properly dismissed this count.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/22/2016